423 So.2d 1080 (1982)
Naomi CARTER and William E. Carter
v.
The CITY PARISH GOVERNMENT OF EAST BATON ROUGE, et al.
No. 82-C-0594.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied December 17, 1982.
*1082 Rhett R. Ryland, Baton Rouge, for applicants.
Owen M. Goudelocke, Mengis, Durant & Carpenter, Anthony J. Clesi, Lane & Clesi, Frank J. Gremillion, John T. Bennett, Baton Rouge, for respondents.
DENNIS, Justice.
We granted writs in this case to determine whether an automobile operator's careless act in driving his car into water near a flooded underpass, after ignoring a barricade closing the highway, was a legal cause of the drowning of his ten year old female passenger, and whether the driver's liability for her death "arises out of the ... use" of the vehicle under the insuring clauses of certain automobile insurance policies. The previous courts rejected the parents' wrongful death suit against two insurance companies because the circumstantial evidence was insufficient to prove that the death of the child, whose body was found beneath the underpass 300 to 450 feet from the car, arose out of the driver's negligent use of the vehicle as required by the companies' policies. We reverse and remand to the court of appeal for an award of damages. The circumstantial evidence excludes every reasonable hypothesis with a fair amount of certainty except those under which the driver's negligent use of his vehicle would have been a legal cause of the child's death. The conduct of the driver of which the plaintiffs complain, his negligent driving, was both a legal cause of the passenger's death and a use of the automobile; therefore, his liability for the victim's death arises out of his use of the vehicle.
The tragic incident occurred at the end of a three-day storm in Baton Rouge that left many streets and some homes flooded, including an underpass on highway I110 near the Governor's Mansion. The pumps which usually drained the dip in the highway at the underpass were shut off to prevent an overflow of Capitol Lake and surrounding populated areas. Highway officials prudently stationed police roadblocks or wooden barricades on the highway and all its entrances in order to prevent access to the flooded underpass.
*1083 On the night of the third day of rain, Larry Davis, his ten year old niece, Greta Carter, and his girlfriend returned to Baton Rouge from Mississippi. At 9:55 p.m., Davis dropped off his girlfriend downtown and started to take Greta to her home in North Baton Rouge. This was the last time any witness saw them alive. The evidence indicates that Larry probably set out on his customary route toward Greta's home, drove to the Tenth Street ramp to Interstate-110, bypassed the barricade blocking the ramp, and proceeded along the interstate until his car encountered the flood waters of the underpass.
Davis' abandoned car was discovered the next morning with its doors locked and water halfway up the seats. The bodies of Larry Davis and Greta Carter were found the next day 300 to 450 feet from the car in deeper water directly beneath the underpass. One of Greta's shoes was found in a mesh fence on the elevated median leading to the underpass. Tests revealed that Davis was intoxicated when he died. His blood alcohol content was .14.
Suits for damages resulting from these deaths were filed by Larry Davis' wife for herself and her children, and by Greta's parents, Mr. and Mrs. Carter, against the Baton Rouge local governing authorities and the State Department of Transportation and Development. Based on Larry Davis' negligence, the Carters brought a direct action against State Farm Mutual Automobile Insurance Company, as Davis' liability insurer, and a separate action against the same company, as Mr. Carter's uninsured motorist carrier. The Carters elected not to include the Succession of Larry Davis as a defendant in their suit.
After a consolidated trial, the trial judge dismissed the actions by Davis' wife and Greta's parents against the local and state authorities upon finding that the highway was properly designed and closed under the circumstances. The trial judge also dismissed the actions by Greta's parents against State Farm on the theory that her death did not arise out of the ownership, maintenance or use of the automobile, as required by the liability and uninsured motorist coverages. He reasoned that the victims' deaths did not arise out of use of the automobile, because they were not using the vehicle when they drowned. The court of appeal affirmed these findings by the trial court.[1] 409 So.2d 345 (La.App.1981). We granted writs only to review whether Greta's drowning was legally caused by and arose out of Larry Davis' negligent use of his automobile. 412 So.2d 1113 (La.1982). The other issues were correctly decided by the court of appeal.
The State Farm basic automobile liability policy issued to Larry Davis provides that the insurer will pay "all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury, sickness or disease, including death ... arising out of the ownership, maintenance or use of the owned automobile ...."
Similarly, Mr. Carter's State Farm uninsured motorist coverage states that the insurer is obligated to pay any sums an uninsured or underinsured motorist is obligated to pay because of bodily injury including death "arising out of the ownership, maintenance, or use of such uninsured automobile...."
Thus, Larry Davis' liability insurance affords coverage for Greta's drowning if two conditions are satisfied:
(1) that Larry Davis or his estate is legally responsible for Greta's death, and
(2) that Greta's death arose out of Larry Davis' ownership, maintenance or use of the automobile.
If these conditions are met, coverage is also available under Mr. Carter's uninsured motorist policy if Davis' policy does not fully compensate the loss.

*1084 I
The previous courts, perhaps understandably, avoided tackling the question of whether Davis' duties as a driver afforded any protection against the risk of Greta's drowning. As Professor Malone observed, of all the substantive tort problems with which a judge must contend, "the most exasperating and elusive is that of determining how far legal protection should extend." Malone, Ruminations on Dixie Drive It Yourself v. American Beverage Company, 30 La.L.Rev. 363 (1970). Yet, we believe this job must be undertaken in order to correctly resolve the case. Indeed, we think our trial and appellate brethren reached an incorrect result because they tried to decide the insurance coverage question without resolving the underlying scope of duty problem.
In deciding the issue of whether the risk resulting in a person's harm was within a duty imposed on an alleged tortfeasor we have adopted an approach which first requires us to answer two principal questions: (1) was the conduct complained of a cause in fact of the harm? (2) was the alleged tortfeasor under a duty to protect against the particular risk involved? LeBlanc v. Department of Highways, 419 So.2d 853 (La.1982); Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). There are other approaches, but we think this one most clearly reveals the judicial decisionmaking process in a negligence case. See, Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin and Associates, Inc., 34 La.L.Rev. 1 (1973); Green, The Duty Problem in Negligence Cases, 28 Colum.L.Rev. 1014 (1928).
The accident in this case occurred because Larry Davis, who was operating his vehicle while under the influence of alcohol, drove his vehicle around or through a barricade placed by authorities on a closed highway and into the floodwaters of a submerged underpass. But for Larry's conduct in ignoring the barricade's prohibitive warning and driving his automobile into the floodwaters of the underpass, Greta probably would not have drowned that evening. The preponderance of the evidence therefore indicates that Larry's combined acts of negligent vehicle operation were a cause in fact of the accident which led to Greta's death.
If the actor's conduct of which the plaintiff complains is a cause in fact of the harm, we are then required in a negligence action to ascertain whether the actor breached a legal duty imposed to protect against the particular risk involved. LeBlanc v. Department of Highways, supra; Jones v. Robbins, 289 So.2d 104 (La.1974); Hill v. Lundin Associates, Inc., supra. The legal duties relevant to our inquiry may be derived from La.R.S. 32:64, which requires operators to drive in a reasonable and prudent manner under the conditions and potential hazards then existing, and La.R.S. 32:237, 261-62, which mandate the observance of warnings or instructions to automobile drivers by highway authorities pertaining to roadway usage and conditions. The focal question, therefore, is whether these statutes provide rules for judicial decision offering protection against the risk of death by drowning to a ten year old female passenger produced by the automobile operator's negligence in driving his car around or through a barricade and into the floodwaters of which it gave warning.
When the rule upon which a plaintiff relies for imposing a duty is based upon a statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court's own judgment of the scope of protection intended by the Legislature. Hill v. Lundin, supra, 256 So.2d at p. 622; Dixie Drive It Yourself System v. American Beverage Co., supra; Pierre v. Allstate, 257 La. 471, 242 So.2d 821 (1970). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. Hill v. Lundin, supra 256 So.2d at pp. 622, 623; Robertson, supra, at p. 8.
*1085 We are of the opinion that in times of flooded highways and underpasses, the risk of drowning by a passenger is contemplated by the legal duty of a motorist to obey the warning and prohibition of a highway department barricade closing a road and his duty to drive in a reasonable and prudent manner under hazardous conditions. The department is authorized to prohibit the operation of vehicles upon any highway when its use is dangerous due to rain or other climatic conditions. La.R.S. 32:261. The department is specifically empowered to place barricades upon any closed highway, and any person is expressly prohibited from driving through or around any such barrier. La.R.S. 32:237(A). Moreover, any driver who violates this law shall be prima facie at fault and responsible for any damage to any person resulting from the violation, La.R.S. 32:237(B), and may be punished by a fine of up to $500 and by imprisonment for 30 days or both. La.R.S. 32:237(E). Applying these laws as guidelines, we conclude that a driver is under a heavy duty to obey barricades and other orders of the authorities closing a highway because of dangerous conditions due to excessive rainfall. Plainly, the risk of drowning in low flooded areas at such times is not unfamiliar to Louisianians and is within the ambit of a driver's duty to obey barricades and road closures resulting from such climatic conditions.
A driver also has an independent duty to operate his vehicle at a speed that is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the condition of the weather. La.R.S. 32:64. By analogy, a driver has a duty to reduce his speed and proceed with extra caution along a highway where extreme weather conditions such as flooding are known to exist, and this duty is imposed to protect the occupants of his vehicle from the risk of drowning and other hazards.
State Farm does not seriously contest that the duties which Larry Davis breached were imposed to protect against Greta's drowning while inside or near the car. The insurer points out, however, that her body was discovered 300 to 450 feet from the car and that plaintiffs' case is based largely on circumstantial evidence. State Farm contends that it can be reasonably inferred therefore, that Greta's drowning resulted from other risks which should not be included within the scope of the driver's duties. The company argues that Greta could have drowned because she knowingly assumed the risk by walking into deeper water although she knew safety lay a short distance in the opposite direction, or because she negligently failed to take the safer route, or because she was led or forced in the wrong direction by Larry Davis who either negligently or knowingly took her toward the deeper water beneath the underpass where their bodies were found.
In a civil case, the plaintiff's burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct, or as in this case, by circumstantial evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Jordan v. Travelers Ins. Co. 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963). Further analyzing the duties imposed on Larry Davis and applying the circumstantial evidence precepts, we conclude that each of the risks hypothesized by State Farm is within the ambit of protection, except for one which cannot be considered as a reasonable hypothesis under the evidence in this case.
The duties of a driver to obey barricades and to avoid placing himself or the occupants of his car in a dangerous predicament are especially onerous when his passenger has a debility of youth, age or infirmity. His duty is heavier not merely because there are additional foreseeable *1086 risks due to the natural weakness of the passenger but also because common sense informs any reasonable person that the vicissitudes of such a situation increase the odds against a child or aged person safely escaping any calamity. Consequently, we conclude that, if Greta unknowingly failed to select the safest path in her exit from the partially submerged vehicle, this risk was within the scope of duty. Considering that she was a ten year old girl forced to abandon a vehicle stranded in water at night in surroundings with which she was unfamiliar as a pedestrian, we do not think it is unforeseeable that she would fail to react to the emergency with deliberate calculation and efficiency. Our courts recognize that a child is not held to the same degree of care as an adult. The test is whether the particular child, considering her age, background, and inherent intelligence, indulged in gross disregard of her own safety in the face of a known risk, understood and perceived the danger. Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La.App. 3d Cir.1975), writ denied, 320 So.2d 207 (La.1975).
Furthermore, a risk is not excluded from the scope of duty simply because it is individually unforeseeable. A particular unforeseeable risk may be included if the injury is easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection. Cf. Hill v. Lundin, supra. Even if the risk of Greta's poor judgment was unforeseeable, her drowning by this means is easily associated with the rule relied upon and other risks of the same type that are clearly within the ambit of protection. Davis' duty of careful operation was obviously imposed, for example, to protect against the closely related risks that Greta would drown because she panicked and could not get out of the swamped vehicle or because she slipped and fell after disembarking.
For similar reasons, we conclude that the risk that Greta would be led in the wrong direction by Larry Davis is also within the scope of duty. Although this risk may have been individually unforeseeable, it was of a sort easily associated with those against which the duty clearly protects. Furthermore, as a matter of policy, the negligence and poor judgment of a would-be rescuer, even though unforeseeable, is within the scope of duty. Under the "rescue doctrine" efforts to protect the personal safety of another, even if negligently executed, do not supersede the liability for the original negligence which created the need for rescue. Lynch v. Fisher, 34 So.2d 513 (La.App. 2d Cir.1948), modified, 41 So.2d 692 (La.App. 2d Cir.1949); Restatement Second of Torts, Sec. 445; Prosser, Law of Torts, p. 277. The rule is not limited to spontaneous or instinctive action, but applies even when there is time for thought. Lynch v. Fisher, supra, Prosser, supra. Since the negligent intervention of even a stranger could not prevent Davis' careless operation of the vehicle from being a legal cause of Greta's death, neither could Davis' own faulty rescue attempt.
The hypothesis that Greta knowingly and voluntarily chose to brave the deeper waters instead of taking a safer route is simply not reasonable. There is no direct evidence to this effect and no indication that she did not possess an ordinarily strong instinct for self-preservation. Under similar circumstances, our courts of appeal have stated that there is a rebuttable presumption that a deceased exercised due care under the circumstances, in conformity with the instinct of self-preservation and the love of life. Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3d Cir.1973); Ebarb v. Southern Farm Bureau Cas. Ins. Co., 251 So.2d 124 (La.App. 3d Cir.1971), writ denied, 259 La. 881, 253 So.2d 215 (1971); Gant v. Aetna Casualty & Surety Co., 234 So.2d 776 (La.App. 1st Cir.1969), writ denied, 256 La. 376, 236 So.2d 503 (1970).
Consequently, we conclude that Larry Davis breached legal duties in the operation of his vehicle which were imposed to protect against the risk which caused her drowning. All reasonable hypotheses leading to a different conclusion are excluded by the circumstantial *1087 evidence with a fair amount of certainty. Larry Davis' estate became legally obligated to pay damages because of Greta's death due to his negligent automobile operation.

II
By the insuring agreements in its policies, State Farm is obliged to pay, within certain limits and conditions, sums which Larry Davis became legally obligated to pay as damages because of his negligent acts "arising out of the ownership, maintenance or use" of his automobile. The arising-out-of-use provision is designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Accordingly, we believe that the limitation requires a court to answer two separate questions: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile? In the present case, we have previously determined that Larry Davis' negligent operation of the vehicle was a legal cause of Greta's death, and, since the conduct of which the plaintiffs complain was Davis' driving, it is obvious that this conduct also constituted a use of the automobile.
Failure to recognize that two distinct issues are raised by the arising-out-of-use provision has caused many courts to formulate unwieldy and inconsistent rules of interpretation that do not assist greatly in answering either question. See Sherville v. National Union Fire Ins. Co., 387 So.2d 1181 (La.App. 1st Cir.1980); U.S. Fidelity & Guaranty Co. v. Burris, 240 So.2d 408 (La. App. 2d Cir.1970); Baudin v. Traders & General Ins. Co., 201 So.2d 379 (La.App. 3d Cir.1967). Many of these rules rely heavily on proximate cause concepts which are not very helpful to the legal cause inquiry and not relevant to the use of the automobile question. Tillman v. Canal Ins. Co., 305 So.2d 602 (La.App. 1st Cir.1974); Ramsey v. Continental Ins. Co., 286 So.2d 371 (La.App. 2d Cir.1973); Baudin v. Traders & General Ins. Co., supra. Such misguided approaches may also prevent a court from concentrating its attention on the more significant question in a particular case. In the present case, the court of appeal fell into error because it failed to address the complex legal cause question and applied, as if it were a statute, a list of proximate cause type factors, to the simple question of whether Larry Davis' negligent driving constituted a use of his automobile. On the other hand, if the insured's conduct of which plaintiff complains, is not the actual operation of the vehicle, whether it constitutes use of the vehicle may be a much more difficult question than whether it was a legal cause of plaintiff's injury. LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978) (a police escort to a funeral procession negligently failed to block a crossing highway); Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968) (a sign was unloaded from the insured vehicle and negligently placed in a store); Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387 (La.App. 1st Cir.1981) (a police car caused an accident and the officer failed to clear the road before another car struck them). A separate analysis of each question helps to clarify the decisive issue and avoid the misapplication of irrelevant criteria. For these reasons, we disapprove of the elaborate arising-out-of-use formula set forth in the court of appeal opinion in this case, 409 So.2d 345, in Sherville v. National Union Fire Ins. Co., supra, and in Baudin v. Traders & General Ins. Co., supra.[2] Instead, we recommend approaching the automobile use issue and legal cause questions separately, avoiding traditional proximate cause concepts, and utilizing a duty-risk analysis to decide the legal cause question.
Because the court of appeal did not reach the issue of quantum in its previous reviews, we will remand the case to it for a proper award of damages. Gonzales v. Xerox *1088 Corporation, 320 So.2d 163 (La.1975). The judgment of the court of appeal is reversed and the case is remanded to it for an award for damages.
REVERSED AND REMANDED.
MARCUS, J., concurs and assigns reasons.
DIXON, J., concurs.
MARCUS, Justice (concurring).
The sole issue is whether or not Greta Carter's death arose out of the use of Larry Davis' vehicle. The evidence shows that Davis negligently used his vehicle when he bypassed barricades and drove his car into flood waters halfway up to the seats. Davis' negligence was a cause-in-fact of Greta's (his 10-year-old niece's) subsequent drowning in the flood waters. The question remains whether the risk of abandoning a car in flood waters and then drowning in the course of doing so was with the scope of Davis' duty not to use his vehicle in a negligent manner. I consider that Davis' duty did encompass this risk and that, therefore, Davis' insurance coverage extended to Greta Carter's death. For these reasons, I respectfully concur.
NOTES
[1] The trial court rendered judgment against Davis' succession in favor of the Carters in the amount of $25,000 for each plaintiff. The court of appeal correctly reversed this part of the judgment because the Carters did not include Davis or his succession as a defendant in their suit.
[2] It should be noted that the court of appeal which introduced this formula expressly warned against using it as a rule of law to decide cases. Baudin v. Traders & General Ins. Co., supra, at p. 384.