LOBRANO, Judge.
Plaintiff, Nathaniel Williams, filed this suit against defendant-appellant E.J. Hull Electric Co., Inc. and its liability insurer, Bituminous Insurance Companies, for injuries he sustained on June 28,1976, when an electrical switch box he was operating on a construction site owned by Sucrest Edible Molasses Company in Harvey, La. burst into flames. Plaintiff was thrown back from the box and allegedly sustained serious injuries. At the time of the accident plaintiff was employed as a cement finisher for Southbend Contractors, the general contractor that built the molasses plant. United States Fidelity and Guaranty Co. (hereinafter referred to as U.S.F. & G.), South-bend’s compensation carrier filed an intervention to recover the compensation and medical benefits paid to plaintiff.
After a trial by jury, judgment was rendered against the defendants awarding plaintiff the sum of $75,000.00. Judgment was also rendered in favor of the intervenor and against the plaintiff in the sum of $26,100.47 together with legal interest.
Defendant E.J. Hull Electric Co. and its insurer have appealed. Plaintiff has answered the appeal seeking an increase in quantum and a reversal of the judgment in favor of the intervenor.
The electrical switch box that burst into flames had been placed at the construction site by the defendant as part of its work as the electrical contractor for Southbend. On the date of the accident, June 28, 1976 Mr. Williams came to work early, opened the building to allow the plumbers in, then went to the disconnect box and threw the switch. An internal sparking occurred within the electrical box causing a phase-to-phase short circuit, which plaintiff claims to have thrown him backwards injuring his neck and shoulders.[1]
The unrefuted expert testimony at trial supports the conclusion that the disconnect switch shorted because some unknown person or persons placed a brazing rod across the three “lug nuts” located within the switch box. This switch box was studied by two electrical engineers and one metallurgist, all of whom agreed that there were no problems in the electrical circuitry or wiring. Dr. Brown, a licensed professional electrical engineer hired by the plaintiff to investigate the cause of this incident, offered no evidence of any defects in the electrical circuitry, wiring or any other integral part of the electrical box.
The record reflects that E.J. Hull had left the job site at least three weeks prior to the date of the accident. They removed their trailer from the premises, requested and saw to it that the City of Gretna inspected their electrical work, and had L.P. & L. energize the system prior to their vacating. Additionally, the plaintiff had operated the switch for at least one week before the incident without experiencing any difficulties. Thus we are convinced the accident was caused by an act of sabotage performed by persons unknown sometime between the end of the. work day of June 27th and the morning of June 28, 1976.
There is no direct or positive evidence in the record which indicates, nor does plaintiff seriously contend that the defendant placed the brazing rod over the “lug nuts”. *1099 Plaintiff argues two theories in support of his position. First he argues that the doctrine of res ipsa loquitur is applicable to the facts, therefore appellant had the burden of exculpating itself which it failed to do. Secondly, if res ipsa loquitur is not applicable appellant was negligent in failing to properly secure the disconnect box, thus allowing easy access for the saboteur. We reject both theories, and reverse the judgment below.
RES IPSA LOQUITUR
The doctrine of res ipsa loquitur applies only where the following circumstances exist:
(1) the defendant had exclusive control over the area;
(2) the cause of the accident which resulted in damages is more properly within the knowledge of defendant;
(3) all the facts and circumstances indicate that the negligence of the defendant, rather than the negligence of others, is the most likely cause of the accident.
Narcisse v. Fontcuberta, 359 So.2d 1342 (La.App. 4th Cir.1978)
The testimony adduced at trial clearly establishes that the defendant had left the job site three weeks prior to the accident and had not returned until requested to do so by Southbend on the date of occurrence.
Mr. Morgan, a partner with E.J. Hull, testified that when he left the facility after completing the electrical work he gave keys to the padlock that had been placed on the disconnect switch box to Southbend Contractors. Clarence Berry, Southbend’s job supervisor, testified that after E.J. Hull had completed their work and left the job site that locks were bought at his request and placed on the switch box. Thus the evidence fails to establish that appellant had exclusive control of the sabotaged switchbox. At the very least, employees of Southbend had daily access to the switchbox. Therefore we find that the doctrine of res ipsa loquitur is inapplicable in this case.

Negligence

“It is well settled that the plaintiff has the burden of proving causation by a preponderance of the evidence. It is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant.. . This burden of proof may be satisfied by direct or circumstantial evidence... It suffices if the circumstantial evidence excludes other reasonable hypothesis only with a fair amount of certainty so that it is more probable than not that the harm was caused by the tortious conduct of the defendant.” (citations omitted) Townsend v. State Department of Highways, 322 So.2d 139, 141, 142 (La.1975)
Plaintiff alleges that defendant’s negligence consisted of failing to better secure the switch box so as to prevent acts of sabotage. Specifically, at page 10 of plaintiff’s brief he states “. .. the alleged breach of a duty was in the defendant’s, Mr. Morgan, placing a lock on the disconnect switch box where it was known that there were as many as 72 keys to this lock and that individuals who were in possession of these keys were having a bitter dispute with the company.” Although there is contradictory testimony as to whether it was Hull Electric or Southbend who purchased the locks for the switch box, all agree that the box was in fact locked at the time of the accident. Mr. Morgan, a partner in Hull Electric, testified they supplied the locks, and that all of their locks were keyed alike and that it was possible that 48 to 72 keys would fit the lock. These additional keys would be in the possession of Hull’s employees as well as Southbend’s personnel. Both Clarence Berry and Steve Frierson of Southbend testified it was Southbend who purchased the padlocks that secured the switchbox, and that there were only two keys to each lock.
Assuming that the jury believed Mr. Morgan’s version, and that there were up to 72 keys available, plaintiff still must prove that the conduct complained of was a cause in fact of the harm complained of, and whether the conduct was a breach of a duty owed by the alleged tortfeasor. See, Carter v. City Parish Government of East Baton *1100 Rouge, 423 So.2d 1080 (La.1982). As stated previously, these may be proved by direct or circumstantial evidence.
There is no direct evidence in the record that the saboteur gained access to the switchbox by use of a key supplied by defendant, and therefore plaintiff had to rely on circumstantial evidence. In doing so, he must exclude other reasonable hypothesis with a fair amount of certainty. This, he has failed to do. We particularly note that throughout plaintiff’s brief he refers to what “could” have happened. By the same reasoning, there are many other suppositions as to what could have happened. The saboteur could have picked the lock to gain access; he could have stolen a key from defendant; he could have had a key made; or the box may have been left open accidentally and the saboteur locked it after placing the brazen rods. There is also abundant testimony that Southbend placed the locks on the box, and therefore Hull Electric had no keys at all. We conclude that there simply is insufficient evidence, direct or circumstantial to support the jury verdict and we therefore reverse. Since we do so, the claim of intervenor must necessarily fall, and therefore we also reverse the judgment in its favor. All costs to be borne by plaintiff and intervenor.
REVERSED.

. We note that the transcript of the cross-examination of plaintiff by defendant appears to be missing from the record. It has become increasingly apparent to this writer that the preparation of transcripts in many cases has been done in a very callous manner. Attorneys would be wise to check transcripts as soon as records are filed in this Court.