DUFRESNE, Judge.
This is a suit for damages in tort arising out of a tragic motorcycle accident which occurred on August 12, 1975. The plaintiffs, who are our appellants, are seeking damages for the wrongful death of their son who was killed as he was returning from work on Louisiana Highway 48, commonly known as the Jefferson Highway, at the point where Louisiana 48 becomes an overpass that crosses over the traffic circle of the Huey P. Long Bridge near Clearview Parkway, in Jefferson Parish.
The accident occurred at approximately 4:00 P.M. as the decedent reached the crest of the overpass, lost control of his motorcycle, and skidded into the rear of a tractor-trailer which had broken down and was stationary in the right lane. The decedent was killed instantly.
The defendants are Chart House, Inc., lessee of the tractor (stipulation) and owner of the trailer; Steven Clark, an employee of Chart House, Inc., who was operating the tractor in the course and scope of his employment with Chart House, Inc. (stipulation); Dixie Leasing of New Orleans, Inc., owner of the tractor leased to Chart House, Inc. (stipulation); Saunders Leasing System, Inc., which assumed the tort liabilities of Dixie Leasing of New Orleans, Inc. (stipulation); and Liberty Mutual Insurance Company and Leatherby Insurance Company, which insured the tort liability of the foregoing defendants.
The trial court rendered judgment in favor of the defendants based on the legal conclusion that the plaintiffs’ decedent was contributorily negligent. From this judgment the plaintiffs have appealed. We affirm.
The underlying issue to be resolved by this court on-appeal is whether the decedent was contributorily negligent, thus barring the plaintiffs’ recovery.
The trial judge articulated the reasons for his decision which are as follows:
“There can be no question of the negligence of the defendant driver, Steven Clark. As he drove to the top of the overpass, he heard a loud noise in his rig and, thinking it would damage the vehicle to drive it further, he opted to leave it on the traveled roadway. There is conflicting testimony on the question of whether he properly placed out warning devices; but, the testimony leaves little doubt that he was not protecting traffic reasonably at the time of the accident but was, instead, sitting on the guard rail of the overpass. Negligence is established clearly, Dixie Drive It-Yourself System v. American Beverage Co., [242 La. 471], 137 So.2d 298.
But the demonstrated negligence of Hugh Walter Wilson is equally compelling. The immobile vehicle had been stopped for a considerable time before the accident, with traffic proceeding around it without mishap. Taken together, the testimony of the bus driver, Donald Clay, Officer Mike Sunseri, and Mr. Dart leads necessarily to the conclusion that in the clear weather of the day, the *1265 truck was Risible for a very long distance at least near to one thousand feet for one traveling in the direction traveled by Mr. Wilson; and that Mr. Wilson was driving at an excessive rate of speed under the circumstances then prevailing. The testimony of Mr. Diliberto taken by way of deposition, indicated that when he first saw the truck he thought it was stopped naturally as a consequence of the traffic. The testimony of Mr. Dart is particularly enlightening in the matter of speed, his having used conversative factors in making his computation and arriving at a speed of 53 M.P.H., without taking impact into consideration.
The logical inference of his testimony is that if his testimony had taken into consideration impact speed and that the braking action of the motorbike was applied in an uphill grade rather than a level surface, the speed of the motorbike would have been demonstrated to be greater still.
While the record amply demonstrates negligence on the part of the defendant driver, the evidence also indicates contributory negligence on the part of Mr. Wilson, which was a proximate cause of the accident.”
The evidence in the record provides reasonable basis for a determination that the accident did not result from a particular risk from which the tractor-trailer (defendant) driver’s duty to park correctly was imposed to protect. Because the driver of the tractor-trailer was in violation of law in parking on the overpass, the defendants had the burden of proving that the decedent-motorcyclist was guilty of contributory negligence.
It is our opinion that the trial court reasonably determined that the infraction of the parking or stopping statute by the driver of the tractor-trailer was “a legal cause” of the accident.
Consistently, the courts in Louisiana have decided the issue of whether the risk resulting in a person’s harm was within an imposed duty, by adopting a two pronged query. These two principal questions are: First, was the conduct complained of a cause in fact of the harm? Secondly, if so, did the actor breach a legal duty imposed to protect against the particular risk involved? Carter v. City Parish Government of East Baton Rouge Parish, 423 So.2d 1080 (La.1982); LeBlanc v. Department of Highways, 419 So.2d 853 (La.1982); Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
When the rule relied upon for imposing responsibility is based upon a statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court’s own judgment of the scope of protection intended by the legislature. Hill v. Lundin, supra. See also Pierre v. Allstate, 257 La. 471, 242 So.2d 821 (1970) and Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The identical public policy considerations which act to motivate our legislative body to enact laws to impose duties to protect our unsuspecting citizency from unreasonable risks of harm should also be applied by the judiciary in making its determination. Hill v. Lundin, supra.
The statute we are concerned with on appeal can be found at LSA — R.S. 32:141 which provides:
“Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park, or leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.”
This statute imposes upon vehicle operators, a duty not to stop or park a vehicle on the traveled portion of a highway and a *1266 duty to leave an unobstructed width for the passage of other vehicles.
The tractor-trailer driver’s parking violation was a cause in fact of the accident because the tragic incident would not have occurred if his vehicle had not been stationary on the overpass. Furthermore, he violated a duty derived from the statute which was imposed to prevent the risk of an accident due to an obstruction of a thruway, that is an area necessary for the safe and efficient movement of traffic.
Notwithstanding the foregoing, we must agree with the trial judge and have ourselves concluded, that the evidence supports and justifies a reasonable inference that the stopping and parking of the tractor-trailer in the right lane of traffic of a four lane highway did not impede the safe and efficient negotiation of the highway by others. We therefore conclude that the plaintiffs have failed to show that the risk created by the violation was a legal cause of the accident.
The record is clear with sufficient and adequate testimony to establish that the decedent was traveling greater than the legal speed limit and, in fact was traveling at an unreasonable rate of speed.
Olin Dart, who was qualified as an expert in the field of traffic engineering, highway safety and accident reconstruction, specifically indicated that the speed of the decedent’s motorcycle had to be no less than 55 miles an hour and probably at least 60 miles per hour. The speed limit at this location was 45 miles per hour.
To further support the position of the defendants, there is no doubt that the tractor-trailer was stopped at the crest of the overpass and there is no question that it was in plain view. On the afternoon of the accident, the weather was clear with sufficient daylight and there was a dry road surface with light traffic. Although the tractor-trailer was in plain view, the decedent took no action to avoid colliding into the rear of the trailer. In fact, the manner in which the decedent operated his vehicle could be characterized as failure to maintain proper control.
Accordingly, the trial court’s judgment in favor of the defendants was not clearly wrong. Therefore, the judgment of the trial court is affirmed for the above stated reasons.
AFFIRMED.