519 So.2d 333 (1988)
Daniel W. JONES, Jr., Appellant,
v.
LOUISIANA TIMBER COMPANY, INC., et al, Appellee.
No. 19251-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
*334 Domengeaux & Wright by Bennett Boyd Anderson, Lafayette, for appellant.
Dawkins, Coyle & Carter by William S. Carter, Jr., Ruston, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This is a suit for personal injuries that the plaintiff, Daniel Jones, allegedly sustained when a cable on a trailer owned or leased by the defendant's insured, Louisiana Timber, snapped and threw him to the ground. The trial court held that this bodily injury arose out of the use of an automobile and was therefore excluded from coverage under the terms of the General Liability Policy. Jones now appeals and, for the reasons expressed, we affirm.

FACTS
Prior to the accident, Jones was engaged in the trucking business. He owned his own tractor and hauled loads of wood, gravel and other materials by contract. On August 31, 1982, he went to a pulpwood yard operated by Louisiana Timber with the intention of picking up a trailer of pulpwood to be hauled to a paper mill. This trailer was owned or leased by Louisiana Timber and had been loaded by Louisiana Timber's yard manager, Colvin Garrett. Jones hooked up the air hoses from his tractor to the trailer and then went to secure the load. He climbed up the ladder to the trailer and picked up a chain attached to a steel cable. This cable, 3/8 inch thick and about 60 feet long, was permanently attached to the trailer and was used to bind the load securely. The cable apparently got caught on something and would not extend to full length. Standing close to the back of the load but facing the front, Jones tugged at the cable to free it. The cable suddenly came apart and Jones fell 14-16 feet to the ground, sustaining serious injuries.
Jones testified that the cable came apart because it had been tied together in a place where it had broken. Mr. D.C. Greer, one of the partners of Louisiana Timber, also testified that he inspected the cable and found that it had been tied together. He said this was not a good practice and the cable should have been replaced. R.p.p. 116, 117. The yard manager, Garrett, who had prepared the load of pulpwood, admitted in deposition that some of Louisiana Timber's trailers had tied cables but denied any knowledge of the particular one on which Jones was injured. Garrett's dep., 9-10.
As a result of the injury, Jones has undergone two cervical fusions and is totally disabled from performing heavy manual labor, the only kind of work he has ever done. Louisiana Timber, a small two-man enterprise, had two insurance policies, both from defendant Georgia Casualty: a Workers Compensation policy and a General Liability (GL) policy. Pursuant to the Workers Comp policy, Georgia Casualty immediately began paying Jones maximum weekly benefits and medicals, which came to almost $50,000 at the time of trial and are apparently still being paid.
Jones filed this suit in tort against Louisiana Timber on August 29, 1983; he later added as defendants the company's president, D.C. Greer, and Georgia Casualty in its capacity as GL insurer. Eventually, all defendants were dismissed except Georgia Casualty. Trial was held in November 1985; judgment was rendered in February 1987 rejecting Jones's demands.

DISCUSSION
Before addressing the automobile exclusion, we note a procedural issue that Jones has raised in his reply brief. Georgia Casualty filed a motion for summary judgment urging, in essence, that Jones's tort suit was pre-empted by the remedy of workers comp. LSA-R.S. 23:1032, 1061. The trial court referred this to the merits. Trial was held in November 1985. There were two rulings:
(1) April 29, 1986, refusing Georgia Casualty's motion for summary judgment, holding that Louisiana Timber had not customarily hired employees to do the *335 hauling, so Jones could not be considered a statutory employee.
(2) February 10, 1987 judgment dismissing Jones's suit on the basis of the automobile exclusion in the GL policy.
Jones timely appealed the February 1987 judgment and briefed the insurance issue only. Georgia Casualty then filed a brief arguing not only that the trial court was correct on the insurance issue but also that the judgment could be affirmed on the pre-emption issue. By reply brief, Jones argues the insurer cannot argue the pre-emption issue because it neither lodged a timely appeal nor answered Jones's appeal.
This contention is not correct. The trial court's refusal to render a summary judgment is not appealable. LSA-C. C.P. art. 968. Absent a showing of irreparable harm, Georgia Casualty had no way to contest this decision except to wait until there was a final judgment in the case. Furthermore, an appellee is not obliged to answer an appeal unless he wants the judgment modified, revised or reversed in part. LSA-C.C.P. art. 2133. Obviously Georgia Casualty was not interested in modifying the judgment that completely rejected the plaintiff's claim, so there was no necessity of answering the appeal. We have stated repeatedly that appeal lies from the judgment, not from the reasons for judgment. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir.1987); Cason v. Oglesby, 188 So.2d 718 (La.App. 2d Cir.1966), writ denied 249 La. 842, 191 So.2d 642 (1966). We think the appellee was entitled to argue any grounds that could be reasonably construed to support the judgment. Georgia Casualty was not precluded from raising the workers comp issue in brief.
Because we ultimately hold that the trial court's judgment on the insurance issue is not erroneous, and because this point resolves the case, we will pretermit detailed discussion of the pre-emption issue. We only note parenthetically that Jones, though an independent contractor, spent a substantial portion of his work time engaged in manual labor carrying out the terms of his contract with Louisiana Timber. He was therefore to be treated as an employee of Louisiana Timber's for purposes of comp. LSA-R.S. 23:1021(6). The only question is whether he was performing services arising out of and incidental to his employment in the course of Louisiana Timber's business; unquestionably he was, and his remedy against Louisiana Timber is limited to comp. LSA-R.S. 23:1035, 1032. The phraseology of § 1061, extensively argued in Georgia Casualty's brief, is inapplicable to this case. See Malone & Johnson, Workers' Compensation (13 La.Civil Law Treatise) § 78.
In its general provisions, the GL policy provides coverage for bodily injury and property damage resulting from "logging and lumbering." This coverage is then made subject to specific exclusions, including an "automobile" exclusion:
Exclusions
This insurance does not apply: * * *
(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
(2) any other automobile or aircraft operated by any person in the course of his employment by any insured;
but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured;

* * * * * *
Elsewhere in the policy, an "automobile" is defined as:
a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment[.]
Under this definition, the trailer from which Jones fell was an automobile as contemplated by the policy.
To resolve the issue of whether a given occurrence falls within the automobile *336 exclusion, the supreme court has developed a two-tier procedure. First, through duty-risk analysis, the court must determine whether the insured's conduct of which the plaintiff complains is a legal cause of the accident. If so, then the court must determine whether that conduct arose out of the use of the vehicle. Carter v. City Parish Govt. of EBR, 423 So.2d 1080 (La.1982); McKenzie & Johnson, Insurance (15 La.Civil Law Treatise) § 65. In order for the conduct to arise out of use, the automobile must be essential to the theory of liability; the specific duty breached by the insured must flow from use of the automobile. If the duty existed independently of the automobile, then liability does not arise out of use even though the duty could have been discharged by the use of an automobile. Carter v. City Parish Govt., supra; LeJeune v. Allstate, 365 So.2d 471 (La.1978); McKenzie & Johnson, supra.
The exact cause of this accident was not established. More probably than not, someone acting for Louisiana Timber tied or spliced a broken cable when, according to Mr. Greer, it should have been completely replaced. This would be a negligent act of maintenance of the apparatus attached to the trailer.[1] However, even without proof of this specific act of negligence, we see that Louisiana Timber furnished to Jones a trailer with a defective and dangerous cable attachment. The tractor was under Louisiana Timber's custody and control so Louisiana Timber is answerable for the damage it caused. LSA-C.C. art. 2317. But for Louisiana Timber's conduct in repairing a cable, or furnishing a cable, that snapped when it was applied to its anticipated use, Jones would not have fallen to the ground and injured himself.
Louisiana Timber owed Jones the duty of providing him with a reasonably safe cable for tying down the load. Mr. Greer testified that the hauler or driver was expected to tie down his load if it was loose. A special statute also mandates the secure fastening of loads. LSA-R.S. 32:383 B(1). The driver was thus required to use the cable and it should have been safe. The duty logically encompasses the risk that a man standing on and attempting to secure the load might lose his balance and fall if the cable suddenly came apart. Louisiana Timber's conduct was a legal cause of the injury. The trial court's conclusion to this effect is not manifestly erroneous.
The next question, under the Carter analysis, is whether Louisiana Timber's conduct arose out of use of the trailer. It is obvious that tying together a cable that is attached to the trailer is a form of repairing it and amounts to maintenance of the trailer. This clearly places the insured's act within the automobile exclusion. And if the cause of the accident was the furnishing of a defective cable, then it is a form of strict liability and is predicated on the use of a vehicle "owned or rented by the insured." Use or maintenance is therefore essential to Jones's theory of recovery and the policy exclusion applies. Viewed from the standpoint of Louisiana Timber's conduct, we must conclude that coverage is excluded from the GL policy.
In brief, the parties have chiefly argued about whether Jones's conduct amounted to use of the automobile under the "loading or unloading" provisions of the exclusion. Jones relies on Young v. E & L Lumber Co., 392 So.2d 136 (La.App. 1st Cir.1980), because of its holding that the breakage of a metal band that held together a bundle of lumber had nothing to do with the use or loading of a truck. Under the facts of that case, the holding is correct. The insured bundled up the wood before it was ever placed on the truck; the metal band served to hold the load together not just for transit but also for safe storage in the yard. Therefore the duty of providing a safe binding existed whether or not the loads were being loaded; the automobile exclusion *337 did not apply. Young underscores, however, that the time of the injury is not necessarily determinative, and this distinguishes the result in Young from the instant case. The determinative factor is the source and nature of the duty and breach. See also Gorings v. Edwards, 222 So.2d 530 (La.App. 4th Cir.1969); La. Ins. Guaranty Ass'n v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir.1973), writ denied 279 So. 2d 690 (La.1973). In the instant case, the nature and source of the breach was Louisiana Timber's conduct in negligently maintaining or providing an unsafe vehicle for Jones's use. This conduct unquestionably arose from use of an automobile as defined in the policy and is excluded.
Similarly, in Mauterer v. Associated Indem. Corp., 332 So.2d 570 (La.App. 4th Cir.1976), the court addressed the question of whether injury arose from he failure of a stanchion on a truck or on the negligent operation of a cherry picker being used to load the truck. The court held that the cause of the injury was the stanchion, which served to hold pipes in place. This was so even though a cherry picker was loading the truck when the stanchion broke. The court implicitly looked to the duty of the insured rather than the nature of the accident, reaching the conclusion that the injury was excluded from GL coverage similar to that in the instant case. Even though the court in Mauterer did not settle whether the insured's liability was created through negligence or strict liability, the court correctly approached the problem in essentially the same way that was later approved in Carter. The trial court in the instant case properly relied on Mauterer in reaching its decision.
Jones also argues that if one part of an insurance policy can be construed to extend coverage and another part to deny it, then this ambiguity should be resolved against the party responsible for it. LSA-C.C. arts. 2053, 2056. In support, he cites Lee v. Liberty Mutual, 387 So.2d 621 (La. App. 4th Cir.1980). We do not believe the instant GL policy is ambiguous. It clearly denominates certain provisions as general and others as specific; the intent to establish specific exclusions to general coverage is plain beyond any doubt. LSA-C.C. arts. 2045, 2046. In fact, the civil code contemplates that a contract of general scope may include provisions pertinent to specific situations. LSA-C.C. art. 2052. This is such a contract and we do not find it in any way ambiguous. The instant case is therefore distinguished from Lee v. Liberty Mutual, supra.[2]
We finally note that the Carter analysis suggests a common sense approach to determining whether the use of an automobile is an essential ingredient of the duty breached by the insured. We feel that common sense is served by holding that Louisiana Timber's conduct, which caused the injury, arose from the use of the trailer. In the Louisiana Civil Law Treatise, Profs. McKenzie and Johnson expressed a common sense view with respect to "Truck-Mounted Equipment":
If an accident were caused * * * by a break in defective cable, then the "automobile," as defined by the policy to include any attached machinery or apparatus, would be essential to the theory of liability. Such accident should be covered under the automobile liability insurance policy and excluded from the CGL policy[.] McKenzie & Johnson, op cit., § 67, pp. 179-180.
This observation is consonant with the conclusion drawn by means of a Carter analysis and fortifies our finding that the trial court's judgment is not erroneous. This bodily injury arose from the ownership, maintenance or use of the automobile and is therefore not covered under the policy. Under Jones's theory of recovery, this defendant cannot be held liable.
The trial court's judgment dismissing Georgia Casualty is not erroneous and is affirmed. For the reasons expressed earlier, we will not discuss the other issues. *338 Costs are assessed to appellant, Daniel W. Jones Jr.
AFFIRMED.
NOTES
[1] Numerous cases have held that faulty repair work amounts to "maintenance" under provisions of automobile policies. See Chase v. Dunbar, 185 So.2d 563 (La.App. 1st Cir.1966), writs denied 249 La. 572, 573, 574, 187 So.2d 738, 739 (1966); Wall v. Windmann, 142 So.2d 537 (La. App. 4th Cir.1962); Knight v. Thomas, 141 So.2d 134 (La.App. 1st Cir.1962), writ denied (not reported).
[2] Lee v. Liberty Mutual has also been severely criticized to the extent that it appears to view the conflicting provisions of general coverage and special exclusion as an ambiguous arrangement. See McKenzie & Johnson, Insurance (15 La.Civil Law Treatise) §§ 187, 66 (fn. 40).