United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 23, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-30529

MARSHALL WAYNE POINDEXTER, Individually and on behalf of
Thomas Wayne Poindexter; BRANDON WAYNE POINDEXTER,
Individually and on behalf of Thomas Wayne Poindexter;
DEBORAH M. POINDEXTER, Individually and
on behalf of Thomas Wayne Poindexter,

Plaintiffs-Appellants,

VERSUS

UNITED STATES OF AMERICA,
on behalf of the U.S. Army Corps of Engineers,

Defendant-Appellee,

DEBORAH M. POINDEXTER; MARSHALL WAYNE POINDEXTER;
BRANDON WAYNE POINDEXTER,

Plaintiffs-Appellants,

VERSUS

BOARD OF COMMISSIONERS OF
THE TENSAS BASIN LEVEE DISTRICT,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana, Monroe Division
3:04-CV-1158

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Plaintiffs Marshall, Brandon and Deborah Poindexter appeal the judgment of the district court dismissing their suit against the United States Army Corps of Engineers and the Tensas Basin Levee District relating to the drowning death of Thomas Wayne Poindexter at a weir in Big Creek. The district court dismissed their case on summary judgment after concluding that the defendants did not have notice of the particular risk of entrapment associated with the weir at which the decedent was drowned. Because we conclude that the district court's view of the scope of the defendants' duty associated with the known risks of the weir was too narrow, we reverse and remand.

I.

The plaintiffs in this case are the surviving sons and spouse of Thomas Wayne Poindexter. They brought a wrongful death and survival action following his drowning death in Big Creek on May 11, 2003.

The drowning occurred in an area of Big Creek where the water level is controlled by a series of weirs. The weirs consist of a wall of corrugated steel running from one bank of the creek to the other and into the creek bed. On the upstream side of the wall is a layer of riprap or rocks that add structural support to the wall and reduce erosion. On the downstream side of the wall is a horizontal steel brace, known as a wale, that runs the length of the weir approximately 13 inches below the top edge. Multiple openings are present between the wale and the wall along the length of the weir.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Poindexter was at Big Creek to go jug fishing with his brother-in-law, Oliver Douglas. It was after midnight when they left the boat dock to retrieve jugs that had been set out by Poindexter and his wife earlier that day. The water was calm but a significant rainfall had occurred the night before and there was a strong current of approximately 10 to 14 inches of water flowing over the weir that night.

One of the jugs they wanted to retrieve appeared to be on or near the weir. As they approached it, the boat propeller became lodged in the rocks of the riprap. Poindexter and Douglas exited the boat to try to walk the boat to the bank. According to the magistrate's report at this point "the boat broke free and went over the weir, Thomas [Poindexter] slipped, was knocked over by the boat, and/or lost his balance and fell, disappearing from sight over the edge of the weir." The plaintiff alleges that as Poindexter and Douglas exited the boat, "they encountered the swift current around the weir, which caused Thomas [Poindexter] to either slip or lose his balance." After Poindexter went over the weir, he became entangled in a corrugated opening of the weir, broke his leg and was trapped under the water, causing his death by drowning.

The plaintiffs originally sued the Tensas Basin Levee District in state court. The Levee District filed a Third Party Demand against the United States (Army Corps of Engineers), which removed the case to federal court. Plaintiffs allege that the defendants were negligent in their ownership and maintenance of the weir and that such negligence caused Poindexter's death by drowning. Plaintiffs also asserted that the defendants knew of the foreseeable hazards presented by the weirs in Big Creek, specifically with respect to the high current and turbulence of the water at and near the weir structure.

It is undisputed that both defendants were aware that under the conditions that existed on the night of Poindexter's death, dangers were presented by the weir structure which could cause strong current, turbulence, undertow and risk of drowning. The United States Army Corps of Engineers had previously placed and maintained signs on cables across the creek, warning boaters and other users of these dangers. The signs were abandoned by the government several years before the accident, as the Corps claimed that the Levee District should assume responsibility for the signs. No signs were in place on the date of the accident.

The defendants moved for summary judgment on several grounds. The Report and Recommendation ("R&R") of the Magistrate Judge concluded that a dispute of material fact existed between the two defendants regarding the ownership, maintenance and repair responsibility for the weirs. Accordingly summary judgment on that issue was denied.

The defendants also moved for summary judgment on the issue of their liability based on lack of duty, no breach of duty, and lack of actual or constructive notice of any defect. The R&R concluded that Poindexter's death was caused by a "freak accident." The report concluded that the primary risk associated with the weir is being swept over and drowned in the undertow or turbulent waters caused by the weir, but there is no known risk of falling off the front of the weir and becoming entrapped in the wale. The report notes that previous signage at the weir addressed hazardous undertow and turbulent water, not the danger of entrapment in the weir itself. Further there was no record of prior accidents or complaints that would have alerted the defendants to the risk. Accordingly, the report recommended that claims against the defendants under Louisiana Civil Code Article 2317 or 2317.1 be dismissed. The district court adopted the Magistrate Judge's report and dismissed the claims.

4

This appeal followed.

II.

We review de novo the district court's ruling on summary judgment applying the same standard as the district court. After examining the record, we ask whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001).

III.

In this case, the plaintiffs allege that the weir constituted an unreasonably hazardous condition under the Louisiana law, specifically Louisiana Civil Code articles 2315, 2317 and 2317.1. Under those articles, in order to establish a negligence claim, the plaintiff must prove that the structure was in the defendant's custody, that it contained a defect that presented an unreasonable risk of harm to others, that the defective condition caused the damage, and that the defendant knew or should have known of the defect. Brown v. Williams, 850 So. 2d 1116, 1120 (La. App. 2d Cir. 2003).

The district court dismissed the plaintiffs' action on the grounds that the defendants were not nor should they have been aware of the particular risk of falling off the front of the weir in such a way as to become entrapped in the wale. Noting that "[t]he primary risk encountered by persons in connection with the weir is the danger of being swept over the weir and drowned by the undertow or turbulent waters created thereby," it distinguished the known risk of drowning from the unknown and unforeseeable risk of being trapped in the weir.

Based on our review of the record and Louisiana law, we conclude that this distinction was drawn too finely. First, as the R&R acknowledged, it was reasonably foreseeable that, given

5

the overflow design of the weir, a risk existed that a person could be swept over the weir by strong or turbulent currents and sustain injury, including drowning. The defendants were aware of this risk. The U.S. Army Corps of Engineers sent a letter to the Levee District informing them of the potential injuries that could be sustained by individuals from the "possible hazard" of the weirs. Further, the warning signs originally posted by the Corps of Engineers indicate knowledge that the weirs posed a hazard to individuals using the creek.

Second, it is inconsistent with Louisiana law to conclude that when a particular hazard exists (risk of person being swept over weir by current) and an injury is foreseeable (drowning), the chain of causation is broken when the foreseeable injury happens in an unforeseeable manner (through entrapment). The Louisiana Supreme Court has stated that "a risk is not excluded from the scope of the duty simply because it is individually unforeseeable. A particular unforeseeable risk may be included if the injury is easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection." Forest v. Louisiana, 493 So.2d 563, 570 (La. 1986), citing Carter v. City Parish Gov't of East Baton Rouge, 423 So.2d 1080 (La. 1982).

In Forest, the court found that the Department of Transportation breached its duty to properly warn motorists of the abrupt and unexpected road closure and detour. A bicyclist who was lifting the barricade to ride the unopened section of the road after midnight was struck by a motorist and killed as he stood in front of an unmarked highway barricade. The court held that although the highway department might not foresee a vehicle striking a bicyclist or pedestrian at this location, the death was easily associated with the Department's duty to properly and safely sign the barricade and is like the risks of the same type that are clearly within the ambit of

6

protection.

In Carter, a child drowned in a flooded area on a highway after exiting the vehicle in which she had been riding. The driver who was intoxicated drove around a highway barricade into a closed section of the road into flood waters. The court found that the risk that the decedent would exit a vehicle stranded in flood waters and choose the wrong direction to try to escape or be led the wrong direction by the driver was within the scope of duties of a driver in the operation of his vehicle.

These cases are in accord with the negligence law of most states - that it is not necessary that a custodian might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred; instead, it is only necessary that the custodian should have anticipated that some injury or harm might result from the identified risk. 100 A.L.R. 2d 942; Ortega v. Texas-New Mexico Ry.Co., 370 P.2d 201 (N.M. 1962); Hopson v. Gulf Oil Corp., 237 S.W.2d 352 (Tex. 1951).

As applied to this case, the unknown risk of becoming entrapped in the weir after encountering the known risk of being swept over the weir by turbulent water is within the scope of the defendants' duty. Mr. Poindexter's injury and drowning is easily associated with the foreseeable risk. In other words, if the defendants had a duty to protect recreational users of Big Creek from the known dangers of the weir - being swept over the weir by strong or turbulent currents and drowning - then the risk that a person swept over the weir would drown by entrapment is covered by that same duty. Summary judgment is inappropriate in this case on the grounds relied on by the district court.

7

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand this case for further proceedings.

REVERSED and REMANDED.