144 So.2d 714 (1962)
Anthony L. VOGT
v.
Warren P. HOTARD et al.
No. 611.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 1962.
Rehearing Denied October 4, 1962.
Certiorari Denied November 27, 1962.
*715 Adams & Reese, George V. Baus and W. Ford Reese, New Orleans, for defendants-appellants, Warren P. Hotard and American Ins. Co.
Hammett & Bertel, Numa V. Bertel, Jr., New Orleans, for defendants-appellants, Warren P. Hotard and Implement Dealers Mut. Ins. Co.
Sidney W. Provensal, Jr., New Orleans, for plaintiff-appellee.
Before McBRIDE, SAMUEL and JOHNSON, JJ.
JOHNSON, Judge.
Plaintiff was assisting Warren P. Hotard to cut down a tree. The tree fell on plaintiff, causing severe personal injuries. This suit is against Hotard, his automobile liability insurance company and his personal liability insurer. From the judgment of the Twenty-Fifth Judicial District Court in favor of plaintiff, the defendants have appealed.
At noon, November 12, 1959, at the home of plaintiff, defendant Hotard asked plaintiff to assist him to fell a tree which was leaning toward his home. Plaintiff agreed to do so and went to said defendant's home that same afternoon to assist in felling the tree. When plaintiff arrived at said defendant's home that day, at about 5:00 o'clock p. m., said defendant had everything in readiness and they immediately went to work to cut down the tree. The best understanding we can get from the evidence is that said defendant had fastened, or looped, one rope around the trunk of the subject tree near the top with each end of the rope tied to an anchor tree at the bottom. These two anchor trees were at the opposite side of the tree from defendant's house to prevent the tree from falling toward the house. Another rope was tied in the top of the tree to be cut, passed around the base of another nearby tree, also on the opposite side of the tree to be cut from the home, and the free end *716 of that rope was tied to the rear bumper of defendant's automobile located in the street in front of the home. The purpose of this rope was to rock the tree and pull it down with the car after the trunk was partially severed with an axe to the extent that it would break off and the tree could be pulled to fall away from the home. After plaintiff and defendant Hotard each had taken turns chopping on the trunk of the tree, Hotard remarked that he thought they had cut enough to be able to pull the tree down with the car. Hotard requested plaintiff to take the axe and stand by the car so that as soon as the tree fell the rope could be cut to release the automobile. Defendant Hotard got in the car, started the motor and ran the car forward with a rapid jerk. One or more of the ropes broke unexpectedly and the tree fell on plaintiff and the car, causing multiple, severe personal injuries to plaintiff.
The plaintiff alleged in his petition and testified that he had no knowledge of how or why the accident happened or why the ropes broke; that defendant Hotard had complete and exclusive charge, control and supervision over the arrangement and rigging of the ropes and the felling operation; that plaintiff had no right to direct or govern the movements of said defendant in this undertaking; that in the absence of negligence on the part of said defendant the accident would not have happened, and that the true explanation of the cause of said accident is more readily accessible to Hotard than to plaintiff. Therefore, plaintiff pleads the application of the doctrine of res ipsa loquitur.
The trial Court in his written reasons for judgment determined that the application of the doctrine of res ipsa loquitur was justified and appropriate. We agree with the Court's conclusion in that respect. After defendant Hotard left plaintiff's home after lunch on that day, he set about making all plans and preparations for the tree felling process. He obtained the ropes, arranged and installed them on the trees and to the automobile, placed the automobile in such position that by pulling on the rope tied to the car, the resulting force on the tree would be in the direction away from the car and the home. Said defendant had everything in readiness when plaintiff arrived. Plaintiff said he asked no questions but merely glanced at the ropes and thought it looked like a good arrangement to do the job. Hotard instructed plaintiff what to do and where to stand when the car pulled on the rope. When the top of the tree hit plaintiff, he said he did not know what happened and he was taken immediately to the hospital. All evidence emphasizes the fact that defendant Hotard actually engineered and executed every step of the operations and gave the orders to plaintiff as to what to do in connection therewith. Said defendant relied entirely upon his own judgment in what ropes to obtain and in the use of the ropes and in the use of and manner of driving the automobile.
In some common law jurisdictions the employment of the doctrine of res ipsa loquitur has little effective implications and does not change the burden of proof or the admissibility of evidence. In Louisiana the rule by which said doctrine is applied is more rigorous in the requirement that plaintiff is at a decided disadvantage by lack of evidence or knowledge as to causation, and that the instrumentalities which are involved are under the control and within the exclusive knowledge of defendant as to their suitability and use. Therefore, under such circumstances, the happening of an event causing damages results in the creation of a presumption of negligence chargeable to said defendant and the burden of proof then shifts to defendant to exculpate himself and thereby overcome the presumption.
We quote the following from Hawayek v. Simmons, La.App., 91 So.2d 49, 61 A.L.R. 2d 1254:
"The doctrine has been applied in a variety of cases by the courts of this state, and the theory underlying the doctrine is that the rights of a person *717 who is injured in an accident under circumstances which leave the cause of the accident unknown to him must be protected. As a result of the doctrine there then arises the legal presumption of the superior knowledge on the part of the owner, possessor or operator of the instrumentality which caused the injury. Roy v. Louisiana State Department of Agriculture & Immigration, 216 La. 699, 44 So.2d 822; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437; Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233; Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Jones v. Shell Petroleum Corp., 185 La. 1067, 171 So. 447; Mercer v. Tremont & G. Ry. Co., La.App., 19 So. 2d 270; Gershner v. Gulf Refining Co., La.App., 171 So. 399; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158."
See also the following decisions: Great American Indemnity Company v. Ford, La. App., 122 So.2d 111; Saunders v. Walker, 229 La. 426, 86 So.2d 89; Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575; Shields v. United Gas Pipe Line Company, La.App., 110 So.2d 881; Holder v. Lockwood, La. App., 92 So.2d 768; Leigh v. Johnson-Evans Motors, La.App., 75 So.2d 710; Johnson v. Louisiana Coca-cola Bottling Co., La.App., 63 So.2d 459.
When we examine the evidence in this case there are a number of important questions which come to mind, the answers and explanations as to which may have relieved said defendant of liability. One thing said about the mechanics of the rope arrangement is that one of them was looped around the tree to be cut down and the ends tied to anchor trees, but we are not told why the rope was merely looped on the subject tree and not securely fastened so that the rope would not slip if the tree fell in the wrong direction, as it did. The location of the anchor trees may have been important. Just what was their position as relates to the subject tree? How far from the subject tree and in what direction were the anchor trees from the spot where it was intended the subject tree would fall? Where was the tree around which the rope which was tied to the automobile passed? And what kept the rope from slipping up the tree around which it passed as the car jerked forward and as the subject tree fell? What was the size and height of the subject tree? This is very important in relation to the size of the rope employed. There is a section of the rope filed in evidence. Whether this exhibit was part of the anchor ropes or was from the rope which was tied to the automobile we are not told. The evidence does not say, but by actual measurement the rope used was a three-quarter inch common grass rope. The trial Court found the rope to be old. There is no testimony about that, but from a visual inspection of the section in evidence it is readily disclosed that the rope is definitely not new. Why was the automobile gunned forward with a rapid jerk? Anybody with a grain of sense knows that to exert a pull for maximum effect, such movement is not only the grossest negligence, it is downright foolhardy. It is only common sense that to overcome the inertia of a still body, external force should be applied gradually. What was the direction of the cut at the base of the subject tree with respect to the desired direction of the fall? And on which side of the tree was the deeper cut? This is very important in throwing a tree in a desired direction and the cut depends somewhat on the lean of the tree, and whether the wood will break easily, like a pine tree, or is tough like an oak or elm. We can only conclude, first, that by the failure of defendant Hotard to inform the Court on all these matters, he has not met the burden imposed upon him to prove himself free of negligence, and, second, that the presumption that said defendant was guilty of negligence which constituted the proximate cause of the accident *718 and the resulting damages has not been rebutted.
Defendants allege and argue that plaintiff and defendant Hotard were engaged in a joint venture, in that, by an advance agreed arrangement, plaintiff was to assist said defendant to cut down a tree to prevent it from falling on said defendant's home, and in turn defendant Hotard at some future time would help plaintiff to cut down a tree in plaintiffs yard. This loose discussion did not turn the two operations into a joint venture for the benefit of both parties. Each job was for the separate, individual benefit of the party for whom each subject tree was to be cut, and the reciprocal service was in the manner of speaking a form of payment to the one assisting the other.
Defendants further contend that plaintiff assumed any risk of danger involved and plaintiff was, therefore, guilty of contributory negligence. In support of this plea, defendants rely upon the case of Spears v. American Fidelity & Casualty Company, 123 So.2d 513, where it was said by this Court:
"There is an abundance of jurisprudence plainly to the effect that when a person exposes himself to a known danger he assumes the risk and is guilty of contributory negligence if injured."
It will be observed that a plaintiff cannot recover where he exposes himself voluntarily to "a known danger." In that case cited next above, plaintiff not only assisted in replacing an angle iron without making it secure, he was warned that it might fall again, and it did, causing the plaintiff injury. In that case plaintiff knew of the danger involved and assumed the risk.
That is not the situation now before us. The plaintiff here had no knowledge of any danger, he had no warning or advice from anybody to expect danger, and the outward appearance of defendant Hotard's arrangement seemed reasonable and safe. If defendant Hotard had not gunned and rapidly jerked the car forwird the accident probably would not have happened. The trial Court said that Hotard's operation of the automobile alone was "extremely negligent." If there were no other acts of negligence, this item of extreme negligence on the part of Hotard is sufficient in itself to permit plaintiff to recover.
On the night of the accident, plaintiff was taken to the hospital where Dr. G. M. Bodron dressed the wounds and took charge of plaintiff for treatment. X-Rays revealed that there was a fracture in the left shoulder blade with evulsion of a fragment but without a displacement, and a fracture of the sacrum of the pelvis region, without displacement. Plaintiff suffered a cerebral concussion. There was a severe laceration almost completely across the forehead and to the skull in depth, leaving a scar. A proper support for immobilization was applied to the shoulder and he was allowed to go home for bed rest and future treatment after five days in the hospital. The doctor saw and treated plaintiff many times until August 15, 1960. The trial Court allowed $7,500.00 for personal injuries, pain and suffering, $622.17 for medical expenses and $600.00 for loss of wages, all of which is well supported by the evidence. The plaintiff actually lost no wages because he was paid his full salary during his enforced absence from work, but he was compelled to use his vacation and sick leave. Therefore, he is entitled to collect his wages anyhow. Chandler v. F. Strauss & Son, La.App., 194 So. 133.
Defendant Hotard's insurance companies admitted coverage, but denied liability. The automobile insurer is liable because of said defendant's negligence in the use and operation of the insured vehicle. As the trial Court said, the subject tree was leaning over Hotard's home and it was to his personal interest to remove the danger. In doing so, his negligent use and arrangement of the ropes was his personal *719 responsibility and renders his personal liability insurance carrier likewise responsible.
The only error we find is that the maximum coverage for one person by the policy of American Insurance Company is $5,000.00, and the judgment is hereby amended only insofar as American Insurance Company is concerned, and only as to defendant American Insurance Company the judgment is hereby reduced to $5,000.00. Otherwise, and as thus amended, the judgment is affirmed.
Defendants to pay costs of appeal.
Amended and affirmed.