688 So.2d 180 (1997)
Evans CASSO
v.
UNITED CABS, INC., et al.
No. 96-CA-0982.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 1997.
Writ Denied April 4, 1997.
*181 William E. Mura, Jr., New Orleans, for Plaintiff/Appellant.
Gregory M. Porobil, New Orleans, for Defendant/Appellee.
Before CIACCIO, PLOTKIN and LANDRIEU, JJ.
LANDRIEU, Judge.
The sole issue in this appeal is whether the trial court properly granted a motion for summary judgment in favor of defendant Louisiana Insurance Guaranty Association (LIGA), as successor to defendant Certified Lloyds Plan Insurance Co., on the issue of plaintiff Evans Casso's right to recover under the liability portion of an insurance policy issued by Certified Lloyds. The judgment dismissed LIGA from the suit. Finding that Casso's injuries, which he allegedly suffered while riding in LIGA's insured's cab, are not covered under the Certified Lloyds's policy, we affirm the trial court judgment.
In the instant case, the following facts are undisputed: On the night of April 4, 1990, Casso was socializing with his friend at the local neighborhood bar. While there he was befriended by defendant, Francis Segreto. Segreto and Casso played pool and drank together until sometime after midnight, at which time Casso announced that he was going home. Segreto offered Casso a ride home in his cab, and Casso accepted. Casso, Segreto and Michael Prouxl (a friend of Segreto's) entered Segreto's cab with Segreto driving, Casso in the rear seat and Prouxl in the front passenger seat. Segreto drove Casso to his home, but upon arrival, refused to let Casso exit the cab. Segreto and Prouxl then drove Casso around the city all the while cursing and threatening to shoot *182 him if he tried to get out the cab, if the doors opened, or if he tried to escape. Segreto erroneously believed that Casso had been sleeping with his wife.
At approximately 4:00 a.m., while still in the cab, Prouxl said "Come on, let's shoot him." At that time Segreto then pulled the cab to the side of the street and put the cab into park. Fearing for his life, Casso pulled his revolver and shot and killed Segreto and Prouxl in self-defense. It was later determined that Segreto and Prouxl were unarmed, highly intoxicated, and under the influence of drugs. As a result, Casso was charged with the murder of Segreto and Prouxl. After two jury trials, the result was a unanimous not guilty verdict. Casso spent nine months incarcerated at Orleans Parish Prison.
Casso sued United Cab Company and M.L. LeBlanc, as owner(s) of the cab driven by Segreto; Certified Lloyds Insurance Company, United's insurer[1]; and Segreto's estate, claiming mental pain and suffering incident to his ordeal and incarceration, plus attorney's fees expended in his criminal defense and this civil proceeding.
Casso filed a motion for summary judgment on the issue of coverage under the policy. The trial court effectively denied Casso's motion, rendering judgment in favor of LIGA. LIGA then filed its own motion for summary judgment on the same issue. The trial court, in effect, granted LIGA's motion and, in a March 3, 1996 judgment, dismissed LIGA from the suit. Casso appeals the March 3 judgment, and the sole issue on appeal is whether the policy at issue provides coverage under the facts as related by Casso.
Appellate courts review summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Walker v. Kroop, 96-0618 (La.App. 4th Cir. 7/24/96), 678 So.2d 580, 584.
The insurance policy in this case provides coverage for bodily injury or property damage caused by an "occurrence and arising out of the ownership, maintenance or use... of an owned automobile...."
Casso contends that the trial court erred in granting LIGA's motion for summary judgment because there remain unresolved issues of material fact concerning coverage under the policy. He argues that Segreto's and Prouxl's actions were unexpected and unintended and that decedents' use of the cab was essential to their plan to threaten, scare and intimidate him. As such, Casso maintains that but for the cab, Segreto and Prouxl could not have restrained him or threatened his life. This use of the vehicle, Casso argues, caused him to kill in self-defense and suffer criminal prosecution for murder.
LIGA defends the granting of summary judgment in its favor, arguing that the damages incurred by Casso under his factual situation are not covered under the policy because they were not the result of an "occurrence" as defined by the policy, and because they did not arise out of the "ownership, maintenance or use" of the covered automobile. LIGA maintains that Segreto's and Prouxl's actions can be viewed in no other light than expected and intended. Further, LIGA relies on the holding in Smith v. Estrade, 589 So.2d 1158 (La.App. 5 Cir. 1991) that the "arising-out-of-use" requirement of the policy contemplates an injury-causing activity commonly or readily associated with the use of a vehicle, and that the decedents' actions do not fit this requirement.
The automobile insurance policy at issue provides coverage only if the damages claimed arise out of an "occurrence," which is defined as "an accident ... which results in bodily injury or property damage neither expected nor intended from the viewpoint of *183 the insured." LIGA contends that Casso's claims do not fall within that definition because the incident itself was not unexpected or unintended considering the deliberate nature of the actions taken by Segreto and Prouxl.
Not only do we have difficulty identifying an "accident" in this case, but we find that the seemingly similar case of Breland v. Schilling, 550 So.2d 609 (La.1989) is easily distinguished. Breland, a case in which a homeowner's insurance policy contained definitions similar to the policy in the instant case, stressed that the phrase "from the standpoint of the insured" emphasizes that it is the insured's subjective intention and expectation which delimit the scope of the exclusion at issue. In the instant case, however, the insured is dead and, given the circumstances, we are unable and unwilling to surmise his subjective intention. Hence, the facts of this case do not fit within the definition of "occurrence" in the policy.
Furthermore, LIGA claims that Casso's damages are not recoverable under the policy because they do not arise out of the "ownership, maintenance or use" of a covered automobile. We agree.
In Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La. 1982), followed in Kessler v. Amica Mutual Insurance Co., 573 So.2d 476 (La.1991), the Louisiana Supreme Court noted that the "arising-out-of use" provision was designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Additionally, the court formulated two questions which courts are required to answer in order to establish whether an arising-out-of-use provision has been met: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?
To answer the first question, Carter instructs us to undertake a duty-risk analysis. In this case, the risk involved was that Casso was imprisoned for nine months and had to defend himself in two murder trials. This risk is not at all contemplated by a legal duty which Segreto might arguably have to refrain from driving Casso around town while threatening or intimidating him.
Moreover, to conclude that an injury arose out of the use of the automobile, a court must find the vehicle essential to the theory of liability. Lucey v. Harris, 490 So.2d 416 (La.App. 5 Cir.1986), writ denied, 496 So.2d 327 (La.1986). In this regard, a court should apply a common sense approach to determine whether the duty breached by the insured flows from the automobile's "use" under the policy language. Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968). If the duty breached is independent of the use of the car, then no liability can arise. Lucey v. Harris, supra.
In Lucey, the decedent's widow sued a taxicab driver and his insurer for her husband's death after he was shot by the taxicab's passenger. The insurer successfully moved for summary judgment on the issue of coverage. After analyzing cases from other circuits involving batteries which occurred in a vehicle or in conjunction with the use of a vehicle and in which the issue was whether coverage existed under the respective automobile liability policies, the Fifth Circuit noted that courts have consistently refused to extend the "arising-out-of-use" provision of the policies to instances that involved gunshots and physical attacks. That court affirmed the grant of summary judgment, concluding that the tortfeasor's use of the taxicab was only incidental to the injuries sustained by the decedent, and the accident did not flow from the use of the vehicle within the meaning of the insurance policy.
Similarly, in Currera v. Loyd, 531 So.2d 544 (La.App. 5 Cir.1988), the court applied the Carter test in a suit for damages for injuries sustained in the kidnapping, rape, and murder of the plaintiffs' three year old daughter. Affirming the trial court's dismissal of the defendant's insurer on summary judgment, the court explained that the injuries suffered by the victim and her parents were caused by the defendant's violation of a criminal statute, and not by use of the truck, although the defendant may have used the truck to effect his getaway and may have raped the child in the truck.
*184 In Kessler, supra, after a near intersectional collision between his car and a vehicle driven by an unidentified driver, the plaintiff was shot by the unidentified driver when he blew his horn at the motorist for running a stop sign. The Supreme Court reversed the trial court and rendered summary judgment in favor of the insurance company concluding:
The conduct which was the legal cause of the plaintiff's injury was the unidentified motorist shooting a gun toward the plaintiff. A common-sense analysis reveals that this conduct was not a use of the vehicle despite the fact that the unidentified motorist may have been using the vehicle at the time. The duty that the unidentified motorist breached existed independently of his use of the automobile. The fact that he was in his vehicle at the time of the shooting was incidental to the breach of his duty not to shoot at the plaintiff. This breach did not require the use of the vehicle nor did it involve the use of the vehicle. (citations omitted.)
Applying the foregoing analysis to the undisputed facts in this case, we conclude that the decedents' use of the taxicab was only incidental to the injuries suffered by Casso. Those injuries did not occur as a result of the use of the vehicle within the meaning of the "arising-out-of-use" provision of the policy. Casso's damages arose from the decedents' criminal behavior, activities which neither flowed from, nor were reasonable and natural consequences of, the use of the vehicle.
Because this case satisfies neither query enunciated in the two-prong test set forth in Carter and does not fall within policy definitions, the trial court did not err in granting summary judgment finding that the policy did not cover the damages alleged by Casso. We affirm the trial court's judgment which Casso appealed. All costs are assessed against appellant.
AFFIRMED.
PLOTKIN, Judge, dissenting.
For the reasons detailed below, I respectfully dissent from the majority's decision affirming the trial court judgment granting summary judgment in favor of defendant LIGA, as successor to defendant Certified Lloyds. I would find that the Certified Lloyds' policy does provide coverage for plaintiff Evans Casso's injuries under the unique facts of the instant case, and reverse the trial court judgment granting LIGA's motion for summary judgment, denying Casso's motion for summary judgment, and dismissing LIGA from the suit. Moreover, I would enter summary judgment in favor of Casso and remand the case for further proceedings.
This appeal involves the granting of one motion for summary judgment and the denial of another motion for summary judgment. In the instant case, LIGA does not contest Casso's version of the facts. Thus, no genuine issues of material fact exist, making the only issue before this court whether one of the parties filing cross motions for summary judgment is entitled to judgment as a matter of law. I disagree with the majority's resolution of that legal issue.
Under the provisions of Section A of the policy at issue, coverage for bodily injury and property damage is limited to that "caused by an occurrence and arising out of the ownership, maintenance, or use ... of an owned automobile." LIGA's claim that it is entitled to judgment as a matter of law is based on two arguments: (1) that the incident resulting in Casso's damages was not an "occurrence" under the policy provisions, and (2) that Casso's damages were not caused by the "ownership, maintenance or use" of a covered automobile.
1. Definition of "occurrence"
The automobile insurance policy at issue provides coverage only if the damages arise out of an "occurrence," which is defined by the policy as follows: "an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the viewpoint of the insured." LIGA claims, and the majority holds, that Casso's claim falls under this definition because the incident itself was not unexpected or unintended, *185 pointing to the deliberate nature of the actions taken by Segreto and Prouxl.
However, both LIGA and the majority misinterpret the policy language. The definition of "occurrence" quoted above refers to accidents which result "in bodily injury or property damage neither expected nor intended from the viewpoint of the insured." A similar intentional injury exclusion was interpreted in Breland v. Schilling, 550 So.2d 609 (La.1989), as follows:
This clause does not by its precise terms exclude coverage for bodily injury caused by the insured's intentional act. Rather, it excludes coverage for bodily injury "expected or intended from the standpoint of the insured." The phrase "bodily injury ... which is expected or intended," emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act. The next phrase, "from the standpoint of the Insured," emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy.
Id. at 611. In Breland, the court found that an intentional injury exclusion did not exclude coverage when the defendant insured hit the plaintiff and broke his jaw, because the broken jaw was neither intended nor expected from the viewpoint of the insured. This holding was based on the defendant's statements that he did not intent to break the plaintiff's jaw or to do the plaintiff any serious harm and that the broken jaw was a "freak accident." The court stated as follows:
We hold, therefore, that when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, the coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact.
Id. at 613. See also Yount v. Maisano, 627 So.2d 148 (La.1993).
Under the above interpretation of the intentional injury exclusion of the insurance policy at issue in the instant case, the word "occurrence" refers not to unexpected or unintended actions, but to unexpected and intended bodily injury or property damage arising from those actions. Under the facts as related by Casso, certainly Segreto and Prouxl expected and intended to act as they did; certainly they expected that Casso would be scared as a result of their actions. However, just as certainly, Segreto and Prouxl neither expected nor intended that their actions would result in their own deaths. Even more certainly, Segreto and Prouxl neither expected nor intended for Casso to suffer the damages he claimsthat is, damages arising from a nine-month imprisonment, as well as expenses incurred in successfully defending himself in two murder trials. Thus, I would find that an "occurrence" caused the damages suffered by Casso under the definition of that word as used in the Certified Lloyds policy at issue in the case.
2. Coverage under the policy
Second, LIGA claims that the damages alleged by Casso are not recoverable under the policy at issue because they do not arise out of the "ownership, maintenance, or use" of a covered automobile.
The issue of coverage under an "arising-out-of-use" provision of an automobile liability insurance policy has been interpreted by a number of Louisiana cases. Perhaps the most comprehensive interpretation of the issue is found in the Louisiana Supreme Court's decision in Carter v. City Parish Government of East Baton Rouge, 423 So.2d *186 1080 (La.1982). In that case, the court found that coverage did exist under the "arising-out-of-use" provision in favor of the parents of a 10-year-old girl who drowned after an insured person drove his covered automobile past a barricade placed on a highway which had been closed by authorities and into the flood waters of a submerged underpass. Id. In coming to this conclusion, the court answered two factual questions: "(1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?" Id. at 1087. I disagree with the majority's analysis of those two factors under the facts of the instant case.
A. Legal causation
In deciding the first of the two issues listed abovethat is, whether the policy holder's actions were a legal cause of the plaintiff's damages, the court in Carter considered whether the insured person breached a legal duty imposed to protect against the particular risk involved. Id. at 1084. In so doing, the court applied a lengthy and comprehensive duty/risk analysis. After detailing the policy holder's duty not to circumvent barricades and drive on closed roads, a duty imposed by statutory law, the court found that the risk of the ten-year-old passenger drowning was encompassed by that duty. Id. at 1086. In reaching that conclusion, the court noted that the particular risk might have been unforeseeable, but nevertheless found that it was within the ambit of the duty because it was "easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection." Id.
The Carter decision is routinely cited in other cases involving the "arising-out-of-use" provisions in automobile insurance coverage. As pointed out by LIGA, most of those cases deny coverage and many of the denials are based on a finding that the insured party's duty does not encompass the risk which caused the plaintiff's injuries. See, e.g., Kessler v. Amica Mutual Insurance Co., 573 So.2d 476 (La.1991) (plaintiff was shot by an unidentified driver after expressing his displeasure at the other driver's actions); Smith v. Estrade, 589 So.2d 1158 (La.App. 5th Cir. 1991) (child died when her father shook her to death while driving his automobile).
However, application of a duty-risk analysis in the instant case leads me to the conclusion that, unlike the Kessler case and the Smith case, the actions of the insured party in the instant case were the legal cause of the damages suffered by Casso. I have no trouble finding that Segreto and Prouxl had a duty not to trap Casso in the taxicab and "take him for a ride" as part of a scheme to threaten and intimidate him, including threats to kill him and/or to leave him in a public housing project. Moreover, that duty encompassed the risk that Casso would believe their threats to the extent that he would become convinced that his life was endangered and react by shooting his attackers. I would find that risk, though perhaps not foreseeable, is nevertheless "easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection." Carter, 423 So.2d at 1086.
Despite the majority's decision to the contrary, this conclusion is not inconsistent with the result on the legal causation issue reached by the Louisiana Supreme Court in Kessler, which also involved a gunshot. In that case, the insured party shot a gun at the plaintiff, who had reacted by blowing his horn when the insured party ran a stop sign, almost hitting the plaintiff's vehicle. The court found that the insured party's duty not to run a stop sign did not encompass the risk that the insured party himself would then shot someone who reacted to his driving. Id. Noting that "[t]he running of the stop sign and the shooting were violations of two separate duties," the Supreme Court held that the negligent operation of the vehicle and the shooting "must be treated as separate acts when applying the Carter analysis." Id. at 478.
However, in the instant case, Segreto did not commit two separate acts. Instead, Segreto committed one act, violating one duty that is, using his vehicle as part of a scheme to threaten and intimidate Casso. Casso's reaction was not a separate act of the insured party, but was a justified reaction to the *187 entire scheme perpetrated by the victim. Thus, I would find that Segreto's actions were a legal cause of the plaintiff's injuries.
B. "Use" of the automobile
The Carter court easily disposed of the second question in the analysis for determining whether the "arising-out-of-use" provision of the policy covered the plaintiffs' damages in Carterthat is, whether the conduct of which the plaintiff complained was a "use" of the automobile. Because the plaintiffs complained about the insured person's driving, the conduct was a use of the automobile, the court held. 423 So.2d at 1087.
As was true of the legal causation question, many of the cases following Carter interpreting "arising-out-of-usage" provisions in automobile insurance policies resulted in a finding that the insured party's conduct of which the plaintiff complained was not a use of the automobile. See, e.g., Currera v. Loyd, 531 So.2d 544 (La.App. 5th Cir.1988) (damages suffered by parents of a three-year-old kidnapped, raped, and murdered by insured party did not arise out of the use of the perpetrator's pick-up truck, although the truck was used as a getaway vehicle); Lucey v. Harris, 490 So.2d 416 (La.App. 5th Cir. 1986) (damages suffered by widow whose husband was shot by a taxicab passenger with whom he argued after the taxicab driver stopped the vehicle did not arise out of the use of the taxicab).
Once again, however, I would find the instant case factually distinguishable from the cases cited above. In both Currera and Lucey, the conduct which the plaintiffs complained about was something other than the actual operation of the vehicle, a fact which automatically makes determination of the second question in that analysis more difficult. Currera, 531 So.2d at 545. However, in the instant case, Casso complains of Segreto's actual operation of the vehicle as part of the scheme to frighten and intimidate him. Specifically, Casso claims that Segreto and Prouxl trapped him in the taxicab and drove him around the City of New Orleans, all the while threatening to kill him and leave him in the public housing projects. In fact, Casso's alleges that Segreto's action of pulling off the road and putting the taxicab in park in response to Prouxl's saying "Come on, let's shoot him," was the exact action which convinced him that his life was in danger and lead him to shoot Segreto and Prouxl. Thus, I would find that Segreto's conduct of which Casso complained was a use of the automobile.
Moreover, I would hold that Casso is entitled to coverage under the insurance policy issued by LIGA's predecessor for the damages he suffered as a result of an "occurrence" involving the "ownership, maintenance, or use" of a covered vehicle, making Casso entitled to judgment as a matter of law. Accordingly, I would find that Casso is entitled to summary judgment on the issue of insurance coverage under the Certified Lloyds' policy.
Accordingly, I would reverse the trial court judgment granting the motion for summary judgment in favor of LIGA and dismissing LIGA from the suit. Moreover, I would grant the motion for summary judgment in favor of Casso and remand the case.
NOTES
[1] Louisiana Insurance Guaranty Association was substituted by amendment as successor to the insolvent Lloyds.