KIRBY, Judge.
Plaintiffs appeal the trial court’s denial of their motion for partial summary judgment, which dismissed their attempt to establish liability of the insured’s homeowner’s policy for the homeowner’s son’s injuries sustained while he was removing his father’s dead tree. The issue for review is whether a vehicular exclusion in the homeowner’s policy should bar plaintiffs’ [1] recovery when a cause covered under the policy existed (non-vehicular negli *79 gence) concurrently with the excluded cause (vehicular negligence).

UNDERLYING FACTS AND PROCEDURAL HISTORY

John and Brenda Trammel sued the insurer (Liberty Mutual Fire Insurance Company) of John’s father, Frank Trammel, for negligence, which resulted in John’s injuries, during the removal of a dead tree on Frank’s property in Orleans Parish on June 24, 1999.[2] Frank had tied a rope around a tree limb and attached the rope to a trailer hitch on his van so that he could pull the limb away from the house as they were cutting it to avoid its falling on the house. John was standing |2on a ladder cutting the limb when, unknown to John, Frank moved the van causing the rope to tighten around the limb, which snapped it and knocked John off the ladder. John broke several bones in his ankle as a result.
In effect at the time of the accident were three insurance policies: (1) John’s $25,000.00 automobile policy, which paid its policy limits; (2) Frank’s $50,000.00 auto policy; and (3) Frank’s $100,000.00 homeowner policy. Both Frank’s policies were issued by Liberty Mutual, which took the position that the only coverage it provided was through Frank’s auto policy.
Plaintiffs moved for partial summary judgment against Liberty Mutual to establish its liability under both Frank’s policies: homeowner’s and auto. The insurer opposed the summary judgment for the following reason: the homeowner’s policy excludes liability coverage for injuries “[ajrising out of the ... use ... of motor vehicles ... operated by an insured.” The trial court denied the motion stating:
The damage caused by the negligence of the homeowner, the Plaintiffs father, in this instance is in the operation of the vehicle. Plaintiffs father did not orchestrate or have any control over the tying of the rope. Therefore, there were no acts of negligence by the father outside of the vehicle for the father’s homeowner’s policy to cover.
The trial court also cited Vogt v. Hotard, 144 So.2d 714 (La.App. 4th Cir.1962), as instructive in its decision. In Vogt, the court reasoned that two separate acts of negligence occurred (the first when the homeowner tied the rope and the second when the homeowner moved the car, which caused the tree to fall on plaintiff). The court allowed plaintiff to recover under both the auto and homeowner’s policy in Vogt. In relying upon the reasoning in Vogt, the trial court in the instant case explained:
laThe instant case is distinguishable from Vogt because the Plaintiff was the person in complete control of the arrangement and installation of the rope. The only negligent act that Plaintiffs father can be accountable for was the moving of the van.

ANALYSIS

The plaintiffs argued that if the accident had occurred without the use of the van, the coverage of the homeowner policy would not be at issue. Such a risk was contemplated by the insurer when the policy was issued and Frank paid premiums to cover such a loss. The automobile exclusion was intended to deny coverage for negligence arising solely from the use of a motor vehicle; it should not operate to deny coverage for a loss that has a concurrent, covered cause.
Plaintiffs acknowledge that the precise issue is res nova in Louisiana. Other *80 states that have considered similar policy-language involving the automobile exclusion, however, have held that where an accident has two causes, one vehicular and one non-vehieular, plaintiffs are entitled to recover against both the auto and homeowner policies. See, e.g., State Farm Mutual Automobile Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973).[3]
The closest Louisiana case is a Second Circuit one, Edwards v. Horstman, 27,776, 27,777 (La.App.2d Cir.4/3/96), 672 So.2d 222, where the plaintiff was riding in a car that became involved in a gun battle precipitated by the insured driver. The trial court found that the driver’s negligence in placing the plaintiff “in proximity of a gunman” constituted a covered risk under the driver’s homeowner’s policy. Id. at 225. The court also concluded that the plaintiffs injuries did not arise out of the use of the vehicle, and it refused to apply the vehicular exclusion to deny coverage under the homeowner policy.
Additionally, in Kessler v. Amica Mutual Ins. Co., 573 So.2d 476 (La.1991), the court found that the gunshot injury did not arise out of the use of a car.[4] If the court had utilized the “concurrent causation” doctrine explicitly, the result might have been the same, but the parties did not raise the issue, perhaps because it has no precedent in Louisiana.
Plaintiffs contended that the present case reveals concurrent vehicular and non-vehicular causes of John’s injuries. Under Louisiana rules of construction for contracts, clear and unambiguous provisions must be given effect. Because the insurer drafts the contract, any ambiguities must be construed against the insurer, i.e., the drafter. Thus, the policy exclusions must be narrowly construed and any ambiguity is resolved in favor of coverage. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166; Great American Ins. Co. v. Gaspard, 92-0702 (La.11/30/92), 608 So.2d 981; Lewis v. Hayes, 94-2511, 94-2512 (La.App. 4 Cir. 7/26/95), 659 So.2d 515.
As noted, the instant accident had two causes, one of which was clearly contemplated by the homeowner’s policy and premiums were paid for that type of coverage. The coverage should not be vitiated, plaintiffs asserted, simply because the accident also had a separate and excluded cause. Plaintiffs argued that the [ ^exclusion in Frank’s policy is ambiguous because it does not necessarily and expressly exclude a risk arising from a covered cause along with an uncovered one.
Liberty Mutual argued conversely that the cases cited by plaintiffs are not pertinent because they do not constitute Louisiana jurisprudence. Defendant argued that the law in this state is settled regarding the meaning of the phrase “arising out of.” For example, in Casso v. United Cabs, Inc., 96-0982 (La.App. 4 Cir. 1/29/97), 688 So.2d 180, 183, this court stated:
In Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982), followed in Kessler v. Amica Mutual Insurance Co., 573 So.2d 476 (La. *81 1991), the Louisiana Supreme Court noted that the “arising-out-of use” provision was designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Additionally, the court formulated two questions which courts are required to answer in order to establish whether an arising-out-of-use provision has been met: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?
Defendant argued that the above jurisprudence requires a duty-risk analysis be performed to decide whether the risk that resulted in the person’s harm was within the duty imposed on the alleged tortfeasor. Defendant asserted that Frank’s act of driving the van forward, without assuring his son’s safety, caused the accident. Thus, the vehicle was the cause of the damages.
Further, to meet the second element of the Carter analysis, the vehicle must be central to the theory of liability. Courts should apply a common sense approach to determine whether the duty breached by the insured flowed from the automobile’s “use” under the policy language. Casso, 688 So.2d at 183, citing Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968). In the instant analysis, Frank’s driving of the van was central to the injury: if he had not pulled forward to tighten | fithe rope, John would not have fallen off the ladder and been injured. Therefore, because the accident and subsequent injuries arose out of the use’ of a vehicle, the homeowner policy exclusion defeats the plaintiffs’ motion for partial summary judgment.
Additionally, in response to plaintiffs’ argument that a “concurrent causation” standard should be used to determine “use” cases, the defendant asserted that all the cases cited for such theory are from other jurisdictions and a new standard should not be adopted by this court.
In reply to defendant’s assertion, plaintiffs maintained that the cases referred to by defendants are inapposite because they do not address the issue of concurrent causation. In Carter, supra, there was no homeowner’s policy involved and the court had no occasion to address the issue of concurrent causation. Rather, the question presented was whether recovery could be obtained under the defendant’s auto policy; the insurer contended that no evidence existed that any negligent use caused the drowning. After explaining the test for “arising-out-of-use,” the court concluded that defendant’s negligent driving past the barricade contributed to the accident and allowed recovery.
Similarly, in Casso, supra, the court addressed whether the negligent use of an auto contributed to plaintiffs injuries. A drunken cab driver suspected the plaintiff of cavorting with his (the cabby’s) wife, so he locked the plaintiff in the cab and drove around town with a gun at his head. Applying the Carter analysis, the court found that the plaintiff had suffered the infliction of an intentional tort, unrelated to the negligent use of the vehicle. Accordingly, the court precluded recovery under the auto liability policy, which excluded intentional torts.
1 |7Neither case is apposite to the instant case because Liberty Mutual is not attempting to disallow coverage under Frank’s auto policy: that issue would be aided by the Carter analysis. Instead, Liberty Mutual seeks to restrict coverage to only the auto policy and to preclude coverage under the homeowner’s policy; this question was not presented in either case cited for support in the insurer’s opposition.
*82 Moreover, the trial court’s reliance on Vogt was misplaced, according to plaintiffs. The fact that Frank did not tie the rope or orchestrate the entire removal of the tree, as the defendant did in Vogt, is legally irrelevant. Frank (1) failed to keep a proper lookout to determine whether John was ready for him to pull on the rope, (2) failed to determine whether his son’s instruction were “Go!” or “No!” and (8) failed to insure that his son had descended to a place of safety before moving the vehicle.
In addition to these acts of negligence, plaintiffs argued that Frank is strictly liable for any damages caused by his rotten tree pursuant to La. C.C. art. 2317. Thus, Frank was strictly liable for the damages resulting from his tree and he was negligent for the unsafe conduct that contributed to his son’s injuries.
Plaintiffs argue on appeal[5] that Johns v. State Farm Fire and Cas., Co., 349 So.2d 481 (La.App. 3d Cir.1977), is factually similar to the instant case and that the Third Circuit reached the proper result. Johns was helping his friend, Allen, remove a dead tree from Allen’s property. Johns climbed the tree with a safety rope around his waist; the other end was tied around a truck driven by Allen’s son. |sWhen plaintiff shifted his weight onto the rope to get to the limb, he fell and broke his back. The court held that the negligence of Allen, Jr. in driving the truck allowed Johns to recover against Allen’s Sr.’s auto policy. Additionally, the court allowed recovery against Allen, Sr.’s homeowner’s policy for the senior man’s failure to properly supervise the tree removal venture on his property. The court relied on a First Circuit decision, Hurston v. Dufour, 292 So.2d 733 (La.App. 1st Cir.1974), where the court adopted the reasoning of Partridge, supra. The Third Circuit explained:
Furthermore, we note that in Hurston ..., our brethren of the First Circuit therein recognized the soundness of the legal proposition espoused in [Partridge ], to the effect that if liability arises from two sources, namely a non-auto related incident as well as an auto related occurrence, the mere fact that one source is excluded under the homeowner’s policy does not render the homeowner’s coverage ineffective if the other source of liability is included thereunder.
Johns, 349 So.2d at 484 (emphasis added). The court reversed the trial court’s summary judgment in favor of defendant insurer and remanded the case to determine whether separate, independent acts of negligence were present such that the homeowner’s auto exclusion would not bar plaintiffs recovery.
Here, plaintiffs argued, the use of the vehicle is the starting point of the inquiry, but the remainder of the query is this: whether a homeowner’s auto exclusion operates to bar recovery under the homeowner policy where an independent, non-vehicular cause of the injuries exists, which would allow coverage under the homeowner policy but for the auto exclusion. Apparently, the First and Third Circuits have answered this question in favor of recovery to plaintiffs.
[9In the instant case, plaintiffs argued that Frank also was strictly liable for the damages resulting from the removal of his rotten tree, located on his property. That cause, clearly falling within the ambit of the homeowner policy, should allow plaintiffs to recover under the policy and not be excluded because of the existence of a *83 separate, independent cause that is not covered under the homeowner policy. Therefore, the plaintiffs’ motion for partial summary judgment on liability under the homeowner policy should have been granted.
The plaintiffs present an interesting issue for this court. Although the trial court based its reasoning on the holding and reasoning in Vogt, we agree with the plaintiffs assessment of that reliance: it is misplaced and legally erroneous. The insured’s actions were negligent in ways separate and apart from his operation of the van. Like the reasoning in Johns, the insured was negligent in his failure to properly oversee the entire removal event. Also, Frank owned the property and the rotten tree. He was, therefore, strictly hable for any damages resulting from that tree and such liability was imputed onto the insurer whom Frank had paid for providing the necessary coverage under his homeowner’s policy.
The trial court incorrectly denied plaintiffs’ motion for partial summary judgment. Accordingly, we reverse the judgment and grant plaintiffs’ motion for partial summary judgment finding liability in favor of the plaintiffs under Frank’s homeowner’s policy.
REVERSED.
LOVE, J., dissents.
PLOTKIN, J., dissents with written reasons.

. The injured son and his wife sued; thus plural "plaintiffs.”

. Liberty Mutual covered Frank with homeowner's and automobile insurance. Apparently, the homeowner coverage would provide $100,000.00 if liability is established.

. Plaintiffs cite in their supporting memorandum for the partial summary judgment motion numerous cases from other jurisdictions that have considered cases factually similar to the instant case.

. Plaintiff, a Tulane law student at the time, was shot in the head by an unidentified motorist who ran a stop sign in an Uptown neighborhood following a near collision and plaintiff's blowing his horn. Plaintiff claimed UM coverage, but the supreme court concluded that "[t]he risk that an occupant of another car might suffer a gunshot wound is not within the scope of the duty to stop at a stop sign.” Kessler, 573 So.2d at 478.

. Two cases were "discovered” following the arguments at trial when an observing attorney called the judge’s law clerk with refer-enees to older cases she knew of: Vogt and Johns, infra.