MOORE, J.
L Phillip Patterson appeals a summary judgment that dismissed his claim against Maxum Indemnity Co. on the basis of the auto exclusion in its Commercial General Liability (“CGL”) policy covering Stephenson’s Tree Service LLC. We affirm.

Factual and Procedural Background

In October 2009, Patterson was standing on a neighbor’s property in Morehouse Parish, watching Stephenson’s cut trees. One of Stephenson’s trucks got stuck in the mud; employees fastened a “snatch block” (a kind of pulley) to a nearby tree and ran a line through it, attaching one end of the line to the disabled truck and the other end to “another piece of heavy equipment” (so described in the petition) to tow the truck. Under great pressure, the line snapped and struck Patterson, causing serious injuries.
In April 2010, Patterson settled his claim against Stephenson’s motor vehicle liability carrier, Colony Insurance, for policy limits of $100,000. The agreement released Stephenson’s but expressly reserved all rights against its CGL and homeowner carriers.
In June 2010, Patterson filed this suit against Stephenson’s and Maxum, alleging various acts of negligence including inappropriately fastening the snatch block to the tree, using a rope that was insufficient to the task, and failing to warn the plaintiff of the danger of standing in the work area.
Maxum moved for summary judgment, urging that the claim was excluded under the policy’s auto exclusion.[1] Maxum argued that the ^accident arose out of the use of not just one but two autos owned by Stephenson’s, and the settlement with Colony proved that the act was subject to motor vehicle coverage, not CGL.
Patterson opposed the motion, arguing that the accident arose from an operational risk rather than an automobile risk. He further argued that the policy’s auto exclusion was subject to an exception for “mobile equipment,” which included “Cherry pickers and similar devices used to raise or lower workers.”[2]
*616 After a hearing in April 2011, the district court denied the summary judgment. The court ruled orally that while the policy has an exclusion for “autos,” it does not exclude “mobile equipment”; the court considered this “somewhat ambiguous.” Further, the petition described the towing vehicle as a “piece of heavy equipment,” while the answer described it as a “vehicle,” leaving an issue of material fact as to whether it was an auto subject to the auto exclusion.
In November 2011, Maxum filed a second motion for summary judgment, citing further discovery showing that both vehicles involved in the accident were indeed autos under the CGL policy. It attached the affidavit of Kenneth Stephenson, Stephenson’s principal, stating that both vehicles were owned by the company, licensed for use on the road and listed as business vehicles on the Colony policy. It also attached registration certificates showing the two | ¿vehicles were a 1991 GMC chassis-and-cab and a 1998 GMC pickup. It argued that under the CGL policy, such vehicles met the definition of “auto” and not “mobile equipment.”[3]
Patterson opposed the motion, urging that because of law of the case, the court could not revisit the issue of coverage. He also argued that the policy was ambiguous and the vehicles were mobile equipment, not autos. He attached a later affidavit from Kenneth Stephenson, referring to the vehicles as a “loader” (the one stuck in the mud) and a “cherry picker,” both maintained “primarily for purposes other than the transportation of persons and cargo.” Dark Xerox-style copies of photos of the trucks were also attached.
After a hearing in March 2012, the district court granted the summary judgment.[4] By written ruling, the court found (1) both vehicles involved were “autos” under the CGL policy, (2) the negligent act that caused the injury was a natural and reasonable consequence and thus arose out of the use of the auto, (3) the policy is clear and unambiguous, and (4) law of the case did not apply, as Maxum supplied additional information to support the | ¿second motion for summary judgment.
Patterson now appeals, raising three assignments of error.

Discussion: Law of the Case

By his third assignment of error, Patterson urges the court erred in finding that the law of the case doctrine did not apply to its prior ruling that the policy was ambiguous. The doctrine holds that courts should not permit reargument, in the same case, of a previously decided point simply because there is doubt as to the correctness of the prior ruling. Welch v. Willis-Knighton Pierremont, 45,554 (La.App. 2 Cir. 11/17/00), 56 So.3d 242, writs denied, 2011-0075, 2011-0109 (2/25/11), 58 So.3d 457, 459. Patterson concedes that law of the case is a discretionary rule, but argues that when the *617 court denied the first motion, this was tantamount to declaring the policy ambiguous and bound the second judge to that finding.
This argument lacks merit. The jurisprudence has consistently found no error when a court hears a second motion for summary judgment after previously denying a motion for summary judgment. Watkins v. City of Shreveport, 45,107 (La.App. 2 Cir. 3/3/10), 32 So.3d 346; Rogers v. Horseshoe Entertainment, 32,800 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, writs denied, 2000-2894, 2000-2905 (La.12/8/00), 776 So.2d 463, 464; Melton v. Miley, 98-1437 (La.App. 1 Cir. 9/24/99), 754 So.2d 1088, writ denied, 99-3089 (La.1/7/00), 752 So.2d 867. When new evidence is introduced after the initial denial of a motion for summary judgment, the court may reconsider the motion. Watkins v. City of Shreveport, supra. In support of the second motion, Maxum offered Kenneth Stephenson’s affidavit and ^registration certificates for both of the vehicles involved; Patterson offered another affidavit from Stephenson and photos of the vehicles. With this additional, relevant evidence, the district court did not abuse its discretion in hearing the second motion for summary judgment.

Ambiguity of Policy

By his second assignment of error, Patterson urges the district court erred in finding the language of Maxum’s policy clear and unambiguous. He shows that any exclusion from coverage must be clear and unmistakable; if more than one interpretation of an exclusion is reasonable, the one affording coverage to the claimant must be adopted. Lucas v. Deville, 385 So.2d 804 (La.App. 3 Cir.1980) (on rehearing), writs denied, 386 So.2d 357, 359 (1980). He argues that Maxum’s policy is “nothing if not ambiguous”: the auto exclusion excludes coverage for injuries resulting from the use of an auto; other provisions negate the exclusion with respect to mobile equipment (vehicles maintained primarily for purposes other than transportation of people and cargo); and mobile equipment is defined to include cherry pickers and vehicles maintained primarily for purposes other than the transportation of persons or cargo. He suggests that these provisions make it impossible to tell if the cherry picker that caused his injury is an auto or mobile equipment. He also argues that even if the cherry picker was an auto, it was not being used in an excluded manner at the time of the accident. Finally, he suggests that the fact that two well-respected judges interpreted the policy in different ways shows conclusively that it is ambiguous.
 LThe insurer has the burden of proving that a loss falls within a policy exclusion. Louisiana Maintenance Servs. v. Certain Underwriters at Lloyd’s of London, 616 So.2d 1250 (La.1993); Stills v. Mims, 42,799 (La.App. 2 Cir. 12/5/07), 973 So.2d 118. The mere fact that an insurance policy is a complex instrument requiring analysis to understand it does not render it ambiguous. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759; Oxner v. Montgomery, 34,727 (La.App. 2 Cir. 8/1/01), 794 So.2d 86, writ denied, 2001-2489 (La.12/7/01), 803 So.2d 36.
We have closely studied the applicable policy provisions and do not see the ambiguity urged by Patterson. The “Coverage A” section extends coverage for bodily injury and property damages to which the policy applies; it then excludes coverage for such damages arising out of the ownership, maintenance or use of an auto, but not for the operation of any machinery or equipment defined as mobile equipment. The Definitions section defines mobile *618 equipment to include vehicles that are not self-propelled, such as cherry pickers; however, it specifically states that self-propelled vehicles, including cherry pickers mounted on a truck chassis, are considered autos. In the same vein, it adds that mobile equipment does not include any land vehicles that are subject to compulsory or financial responsibility law or other motor vehicle insurance law; such vehicles are considered autos. The plain meaning is that damages arising out of the use of autos, self-propelled mobile equipment or mobile equipment subject to motor vehicle insurance law are not covered by CGL but by an automobile 17poIicy. We perceive no ambiguity.
In Adams v. Thomason, 32,728 (La.App. 2 Cir. 3/1/00), 753 So.2d 416, writ denied, 2000-1221 (La.6/16/00), 764 So.2d 965, this court analyzed a CGL policy issued by Hartford Southeast with a similar structure that excluded bodily injury or property damage arising out of the ownership, maintenance or use of an auto or the transportation of mobile equipment (in that case, a cotton trailer). We rejected an argument that the exclusion was ambiguous, affirming a summary judgment which held that the driver of the pickup truck towing the cotton trailer was not covered under the CGL policy. Interpreting Maxum’s policy, we again find that these provisions do not create any ambiguity. We also find that the registration certificates and the photos of the vehicles remove any doubt as to whether the vehicles are autos, self-propelled mobile equipment or mobile equipment subject to motor vehicle insurance law (not covered) as opposed to mobile equipment (covered).
Finally, we attach little significance to the first judge’s remark that the policy was “somewhat ambiguous.” In context, the judge was likely noting that from the pleadings and the limited summary judgment evidence, he could not discern whether the cherry picker at issue would qualify as an auto (excluded) or mobile equipment (included) under the policy. This was a genuine issue of material fact, not a declaration that the policy was inherently ambiguous.
This assignment of error lacks merit.
| ⅜Application of the Exclusion
By his first assignment of error, Patterson urges the district court erred in (a) basing its ruling on a strict application of the “but for” test, and thus failed to distinguish between acts of negligence existing independent of and occurring prior to the alleged use of an auto, and (b) failing to find that the conduct did not arise out of the ownership, maintenance or use of an auto. He shows that to determine whether conduct “arises out of’ the use of an automobile, and thus is excluded from a CGL policy, courts use the two-prong test set out in Carter v. City Parish Gov’t of East Baton Rouge, 423 So.2d 1080 (La.1982): (1) was the conduct complained of a cause in fact of the harm? and (2) was the alleged tortfeasor under a duty to protect against the particular risk? He contends that Stephenson’s acts were a legal cause of the injury but did not arise out of the use of an auto. He offers the following cases in support: Trammel v. Liberty Mutual, 2001-0948 (La.App. 4 Cir. 2/13/02), 811 So.2d 78, rev’d on other grounds, 2002-0768 (La.5/24/02), 816 So.2d 294; Edwards v. Horstman, 27,776 (La.App. 2 Cir. 4/3/96), 672 So.2d 222; Johns v. State Farm, 349 So.2d 481, 6 A.L.R.4th 548 (La.App. 3 Cir.1977); Lucas v. Deville, supra. The real cause of the accident, Patterson suggests, was Stephenson’s conduct in using an inadequate rope, inadequately attaching the snatch block to the tree, and failing to clear the area of bystanders or to warn of the danger; the use of the vehicles was merely incidental to these predominant acts of negligence.
*619 Maxum responds that under any analysis, using one auto to tow another auto out of the mud arises out of the use of the autos. Maxum also |9shows that the Trammel and Johns cases cited by Patterson involved homeowner policies with terms different from the instant CGL policy, and thus do not apply. It submits that the truly apposite cases did indeed find that the accidents arose from the use of an auto, such as Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App. 2 Cir. 1989), writ denied, 556 So.2d 41 (1990); Jones v. Louisiana Timber Co., 519 So.2d 333 (La.App. 2 Cir.1988); and Carter v. City Parish Gov’t of East Baton Rouge, supra.
The use of a cherry picker to pull a loader from the mud is a normal use of ’ such vehicles. The accident arose out of this use and in a situation where Stephenson’s had a duty to protect Patterson from the particular risk of harm, satisfying both prongs of the Carter test. The supreme court recently held, in a slightly different context, that “arising out of’ the “use” of a vehicle means “originating from,” “growing out of,” or “flowing from” the use. Bernard v. Ellis, 2011-2377 (La.7/2/12), p. 14-15, 111 So.3d 995, 2012 WL 2512772.
In light of these principles and a plain reading of Maxum’s policy, we find that Patterson’s personal injury arose out of the use of an auto, and hence fell under the exclusion from CGL coverage. The case is apposite to Jones v. Louisiana Timber Co., supra, in which Jones was trying to secure a load of logs to Louisiana Timber’s trailer. When the cable got snagged, Jones tugged hard on it; it suddenly came apart, hurling him backwards off the top of the load to the ground some 14-16 feet below. This court found that Jones’s conduct arose out of the use of the trailer. We also are guided by the seminal case of Carter v. City Parish Gov’t of East Baton Rouge, supra, in which a 10-year-old girl drowned after her uncle tried to drive the lincar through a flooded underpass; the supreme court found that the drowning arose out of the use of the car, and thus activated coverage under the uncle’s auto policy. The driver in Carter had just as much duty to protect his passenger from floodwater as Stephenson’s employees had to protect bystanders from towing hazards. The jurisprudence cited by Patterson is not persuasive.[5] This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiffs, Phillip and Charlotte Patterson.
AFFIRMED.

. ¶ 2.g.: “This insurance does not apply to: 'Bodily injury’ *** arising out of the ownership, maintenance, use * * * of any * * * ‘auto’ * * * owned or operated by * * * any insured.”

. ¶ 2.g.(5): "This exclusion does not apply to: ‘Bodily injury’ * * * arising out of:
(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment’ if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
(b) the operation of any machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of 'mobile equipment.’ ”
¶ 12.e.: ’’ ’Mobile equipment’ means any of the following types of land vehicles, including any attached machinery or equipment: * * * (2) Cherry pickers and similar devices used to raise or lower workers.”

. ¶ 2: " ‘Auto’ means:
a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.”
¶ 12.f: * * * “However, ‘mobile equipment’ does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered 'autos.' "

. A different judge of the Fourth JDC heard the second motion for summary judgment.

. We particularly note that Edwards v. Horstman, supra, cited and argued in brief, was reversed on writ of certiorari, the supreme court holding that the driver’s conduct therein "clearly constituted the ‘use’ of the automobile.” Edwards v. Horstman, 96-1403 (La.2/25/97), p. 8, 687 So.2d 1007, 1012. The appellate brief completely fails to mention this critical part of the case history, and counsel would do well to check each cite before integrating the case into argument.